UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VHS ACQUISITION SUBSIDIARY NUMBER 7, INC. d/b/a SAINT VINCENT HOSPITAL**<br>123 Summer St.<br>Worcester, MA 01608<br><br>    Plaintiff,<br><br>v.<br><br>**NATIONAL LABOR RELATIONS BOARD**, a federal administrative agency<br>1015 Half Street, SE<br>Washington, DC 20570-0001<br><br>    Defendant,<br><br>**JENNIFER ABRUZZO**, in her official capacity as the General Counsel of the National Labor Relations Board<br>1015 Half Street, SE<br>Washington, DC 20570-0001<br><br>    Defendant,<br><br>**LAUREN M. McFERRAN**, in her official capacity as the Chairman of the National Labor Relations Board<br>1015 Half Street, SE<br>Washington, DC 20570-0001<br><br>    Defendant,<br><br>**MARVIN E. KAPLAN**, in his official capacity as Board Member of the National Labor Relations Board<br>1015 Half Street, SE<br>Washington, DC 20570-0001<br><br>    Defendant, | Civil Action No. _____ |

**GWYNNE A. WILCOX, in her official Capacity as Board Member of the National Labor Relations Board**
1015 Half Street, SE
Washington, DC 20570-0001

    Defendant,

**DAVID M. PROUTY, in his official Capacity as Board Member of the National Labor Relations Board**
1015 Half Street, SE
Washington, DC 20570-0001

    Defendant,

    and

**SUSANNAH MERRITT, in her official capacity as an Administrative Law Judge of the National Labor Relations Board,**
1015 Half Street, SE
Washington, DC 20570-0001

    Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff VHS Acquisition Subsidiary Number 7, Inc. d/b/a Saint Vincent Hospital ("Saint Vincent") brings this action against Defendants National Labor Relations Board ("Board" or "NLRB"), NLRB General Counsel Jennifer Abruzzo ("Abruzzo"), NLRB Chairperson Lauren M. McFerran ("McFerran"), NLRB Member Marvin E. Kaplan ("Kaplan"), NLRB Member Gwynne A. Wilcox ("Wilcox"), NLRB Member David M. Prouty ("Prouty") (McFerran, Kaplan, Wilcox, and Prouty, collectively, "Board Members"), and Administrative Law Judge Susannah Merritt ("Merritt"), for declaratory and injunctive relief and states as follows:

2

## INTRODUCTION

1. Saint Vincent brings this suit for declaratory and injunctive relief against Defendants because Defendants are presently pursuing an unconstitutional unfair labor practice administrative proceeding against it in NLRB Case Nos. 01-CA-290852, 01-CA-298265, 01-CA-307704, 01-CA-309196, 01-CA-310590, 01-CA-314126, 01-CA-325949, 01-CA-326187, 01-CA-326424 (the "Consolidated ULP Administrative Proceeding"), which have been consolidated and are scheduled for trial beginning on September 9, 2024, in Boston, Massachusetts.[1]

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. Indeed, Saint Vincent's claims arise under the Constitution of the United States. It alleges that certain aspects of the NLRB's structure violate the Constitution. *See Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023) (holding statutory review schemes do not displace district court's federal question jurisdiction to adjudicate corporation's constitutional challenge to administrative agency).

3. This Court has authority to grant declaratory and injunctive relief under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and under the Court's inherent equitable powers.

4. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(B) because Defendants are officers of an agency of the United States.

---

[1]Specifically, the ALJ's scheduling order provides: "[T]he hearing in the above referenced case will open via Zoom videoconference at 9:00 a.m. eastern time on Monday, September 9, 2024, but only for my opening statement, notices of appearance of counsel for the record, and the production of subpoenaed documents. The hearing will reconvene at 9:00 a.m. eastern time at the Thomas P. O'Neill Jr. Federal Building, 10 Causeway Street, Suite 1002, Boston, Massachusetts, on Thursday, September 12, through Friday, September 13, 2024. The hearing will continue at the same location in Boston, Massachusetts, on Monday, September 23, through Friday, September 27 (excluding Tuesday, September 24, 2024) and again on Monday, October 21, through Wednesday, October 23, 2024."

**PARTIES**

5. Saint Vincent is an acute care Hospital in Worcester, Massachusetts.

6. The Charging Party in the related and ongoing Consolidated ULP Administrative Proceeding is the Massachusetts Nurses Association ("MNA"), a union who represents a bargaining unit of nurses at Saint Vincent.

7. Defendant NLRB is an administrative agency of the United States, headquartered in Washington, D.C. The NLRB enforces the National Labor Relations Act ("NLRA"). Under the NLRA, the NLRB is "empowered…to prevent any person from engaging in any unfair labor practice." *See* 29 U.S.C. § 160.

8. Defendant Abruzzo is the General Counsel of the NLRB. She is sued in her official capacity.

9. Defendant McFerran is Chair of the NLRB. She is sued in her official capacity.

10. Defendant Kaplan is a Member of the NLRB. He is sued in his official capacity.

11. Defendant Wilcox is a Member of the NLRB. She is sued in her official capacity.

12. Defendant Prouty is a Member of the NLRB. He is sued in his official capacity.

13. Defendant Merritt is an Administrative Law Judge of the NLRB assigned to preside over the Consolidated ULP Administrative Proceeding against Saint Vincent. She is sued in her official capacity.

**FACTS**

14. On May 23, 2024, the Regional Director for Region 1 issued a Second Consolidated Complaint and Notice of Hearing ("Second Complaint") in connection with the Consolidated ULP Administrative Proceeding.[2]

15. The Second Complaint seeks economic remedies, including compensation for: "any direct or foreseeable pecuniary harms incurred as a result of [Saint Vincent's alleged] denial of the majority of grievances on procedural grounds"; "any costs [the Charging Party] incurred as a result of [Saint Vincent's alleged] denial of the majority of grievances on procedural grounds"; "any costs [the Charging Party] incurred as a result of [Saint Vincent's alleged] failure to continue in effect all terms and conditions of the parties' collective bargaining agreement by refusing to allow the Labor Relations Connection [] and American Arbitration Association [] to administer arbitrations after selection of arbitrators"; and "for any direct or foreseeable pecuniary harms incurred as a result of [Saint Vincent's alleged] changes to [] shift bonus incentive program, [] winter market incentive bonus program, and [] switch shift bonus program."

16. On June 6, 2024, Saint Vincent filed its answer and defenses to the Second Complaint.

17. The trial in the Consolidated ULP Administrative Proceeding is set for September 9, 2024 in Boston, Massachusetts before ALJ Merritt. Specifically, ALJ Merritt's scheduling order provides: "[T]he hearing in the above referenced case will open via Zoom videoconference at 9:00 a.m. eastern time on Monday, September 9, 2024, but only for my opening statement, notices of appearance of counsel for the record, and the production of subpoenaed documents. The hearing

---

[2] The Second Complaint includes allegations stemming from the unfair labor practice charges at issue in the Consolidated ULP Administrative Proceeding.

will reconvene at 9:00 a.m. eastern time at the Thomas P. O'Neill Jr. Federal Building, 10 Causeway Street, Suite 1002, Boston, Massachusetts, on Thursday, September 12, through Friday, September 13, 2024.  The hearing will continue at the same location in Boston, Massachusetts, on Monday, September 23, through Friday, September 27 (excluding Tuesday, September 24, 2024) and again on Monday, October 21, through Wednesday, October 23, 2024."

## COUNT I – THE NLRB'S ALJS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL

18. Saint Vincent restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

19. ALJs function as inferior officers of an executive agency. *See* U.S. Const. Art. II, § 2; *see also Lucia v. SEC*, 585 U.S. 237, 251 (2018*); see also Westrock Servs., Inc.,* 366 NLRB No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]").

20. Inferior officers "are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy v. SEC*, 34 F.4th 446, 464 (5th Cir. 2022), *affirmed by SEC v. Jarkesy*, 144 S. Ct. 2117 (2024).

21. The NLRB appoints ALJs, but ALJs may only be removed "for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the [Merit Systems Protection] Board." 5 U.S.C. § 7521(a).

22. Members of the Merit Systems Protection Board are removable only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

23. "If principal officers cannot intervene in their inferior officers' actions except in rare cases, the President lacks the control necessary to ensure that the laws are faithfully executed." *Jarkesy*, 34 F.4th at 464.

24. Because ALJs can only be removed "for good cause…after opportunity for hearing," and the Merit Systems Protections Board Members who may remove ALJs are themselves removable by the President only for "inefficiency, neglect of duty, or malfeasance in office," ALJs are insulated by the President by at least two layers of for-cause removal protections. *See* 5 U.S.C. § 7521(a) and 5 U.S.C. § 1202(d).

25. ALJs are insulated by the President by at least two layers of for-cause removal protections. As the Supreme Court has held, "[t]he added layer of tenure protection makes a difference…[a] second level of tenure protection changes the nature of the President's review…[t]hat arrangement is contrary to Article II's vesting of the executive power in the President." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 495-96 (2010).

26. But for these unlawful removal restrictions, ALJs would be subject to removal by the President.

27. The statutes' provision of at least two layers of for-cause removal protections prevents the President from exercising Presidential authority under Article II of the Constitution.

28. Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "'here-and-now injury'" ripe for judicial intervention. *See Axon Enter., Inc.,* 598 U.S. at 191 (quoting *Seila Law LLC v. Consumer Fin. Protection Bureau*, 591 U.S. 197, 212 (2020)).

29. Saint Vincent is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [Saint Vincent is] subject will be enforced only by a constitutional agency accountable to the Executive." *See Free Enter. Fund*, 561 U.S. at 513.

30. Without interim injunctive relief, Saint Vincent will be required to undergo an unconstitutional proceeding before an illegitimate decisionmaker.

31. Saint Vincent bears a strong likelihood of success on the merits for the reasons articulated above.

32. If the NLRB is not enjoined from proceeding against Saint Vincent in the related unfair labor practice trial, Saint Vincent will be irreparably harmed because it will have endured a proceeding led by officers who are unconstitutionally insulated from removal by the President.

33. The balance of equities tip in Saint Vincent's favor because should the NLRB proceeding go forward, Saint Vincent will lose its right not to undergo a constitutional proceeding, an injury "impossible to remedy once the proceeding is over," and "[j]udicial review of [its] structural constitutional claims would come too late to be meaningful." *See Axon Enter., Inc.*, 598 U.S. at 191.

34. It is in the public interest to remedy the unconstitutional removal procedures here in order to protect Americans' constitutional rights.

## COUNT II – THE NLRB'S MEMBERS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL

35. Saint Vincent restates and incorporates by reference the allegations of the preceding paragraphs 1-34, as if fully set forth herein.

36. Article II of the Constitution states that the President must "take Care that the Laws be faithfully executed." U.S. Const. Art. II, § 3.

37. Article II's Appointments Clause provides the President authority to appoint officers and inferior officers of the United States. *See* U.S. Const. Art. II, § 2.

38. The President has the power to appoint Board Members. The NLRB consists of five Board Members.[3] With the advice and consent of the Senate, the President appoints these Board

---

[3] Currently, the NLRB only has four sitting members.

8

Members to staggered, five-year terms. The President designates one Board member to serve as the Chairman. *See* 29 U.S.C. § 153(a).

39. However, the NLRA limits the President's executive authority to remove Board Members. The President may only remove Board Members "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." *Id.*

40. The President does not have the power to remove Board Members for other causes such as inefficiency—an unconstitutional limit on the President's power. *See id.*

41. Two exceptions to the President's removal power exist: "one for multimember expert agencies that do not wield substantial executive power, and one for inferior officers with limited duties and no policymaking or administrative authority." *Seila Law LLC*, 591 U.S. at 218 (citing *Morrison v. Olson*, 487 U.S. 654 (1988); *Humphrey's Executor v. United States*, 295 U.S. 602 (1935); *United States v. Perkins*, 116 U.S. 483 (1886)).

42. These exceptions do not apply here because Board Members "wield substantial executive power," and ALJs possess vast "administrative authority." *See Seila Law LLC*, 591 U.S. at 218.

43. The Board exerts executive authority in multiple ways. The Board has power to appoint the "executive secretary, and such attorneys, examiners, and regional directors, and other such employees as it may…find necessary for the proper performance of its duties." 29 U.S.C. § 154(a).

44. The Board also has the executive power to prevent any person from engaging in an unfair labor practice, issue subpoenas, engage in rulemaking, conduct union representation elections, adjudicate representation election disputes, and exercise prosecutorial power in federal district courts. *See* 29 U.S.C. §§ 156, 160.

45. The Supreme Court has made clear that even when "the activities of administrative agencies 'take "legislative" and "judicial" forms,' 'they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the "executive Power."'" *Seila Law LLC*, 591 U.S. at 216 n.2 (quoting *Arlington v. FCC*, 569 U.S. 290, 305 n.4 (2013)).

46. But for these unlawful removal restrictions, Board Members would be subject to removal by the President.

47. Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "'here-and-now injury'" ripe for judicial intervention. *See Axon Enter., Inc.*, 598 U.S. at 191 (quoting *Seila Law LLC*, 591 U.S. at 212).

48. Saint Vincent is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [Saint Vincent is] subject will be enforced only by a constitutional agency accountable to the Executive." *See Free Enter. Fund*, 561 U.S. at 513.

49. Without interim injunctive relief, Saint Vincent will be required to undergo an unconstitutional proceeding before an illegitimate decisionmaker.

50. Saint Vincent bears a strong likelihood of success on the merits for the reasons articulated above.

51. If the NLRB is not enjoined from proceeding against Saint Vincent in the related unfair labor practice hearing, Saint Vincent will be irreparably harmed because it will have endured a proceeding led by Board Members who are unconstitutionally insulated from removal by the President.

52. The balance of equities tip in Saint Vincent's favor because should the NLRB proceeding go forward, Saint Vincent will lose its right not to undergo a constitutional proceeding, an injury "impossible to remedy once the proceeding is over," and "[j]udicial review of [its]

structural constitutional claims would come too late to be meaningful." *See Axon Enter.*, 598 U.S. at 191.

53. It is in the public interest to remedy the unconstitutional removal procedures here in order to protect Americans' constitutional rights.

**COUNT III – ADMINISTRATIVE LAW JUDGES ADJUDICATE PRIVATE RIGHTS WITHOUT A JURY TRIAL IN VIOLATION OF THE SEVENTH AMENDMENT TO THE CONSTITUTION**

54. Saint Vincent restates and incorporates by reference the allegations of the preceding paragraphs 1-53, as if fully set forth herein.

55. The Seventh Amendment protects the right to trial by jury. It provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. Amend. VII.

56. The Supreme Court interprets "'Suits at common law' to include all actions akin to those brought at common law as those actions were understood at the time of the Seventh Amendment's adoption." *Jarkesy,* 34 F.4th at 452 (citing *Tull v. United States,* 481 U.S. 412, 417 (1987)). Recently, the Supreme Court noted that the Seventh Amendment "embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume." *Jarkesy,* 144 S. Ct. at 2128 (alteration in original) (quoting *Parsons v. Bedford,* 3 Pet. 433, 447 (1830)).

57. "The term can include suits brought under a statute as long as the suit seeks common-law-like legal remedies." *Jarkesy*, 34 F. 4th at 452.

58. In other words, Saint Vincent is entitled to a jury trial if its adversary seeks *legal* relief against it. As the United States Supreme Court recently held in *SEC v. Jarkesy,* "it is well

established that common law claims must be heard by a jury." *Jarkesy*, 144 S. Ct. at 2127. Moreover, "[o]nce such a suit 'is brought within the bounds of federal jurisdiction,' an Article III court must decide it, with a jury if the Seventh Amendment applies." *Id.* at 2131 (quoting *Stern v. Marshall,* 564 U.S. 462, 484 (2011)).

59. "Compensatory *damages*," or "monetary relief for all losses…sustained as a result of the alleged breach of…duties" are "the classic form of *legal* relief." *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 255 (1993).

60. The NLRA authorized the Board to remedy unfair labor practices through an "order requiring [the] person to cease and desist from such unfair labor practice, and to take…affirmative action including reinstatement of employees with or without back pay." 29 U.S.C. § 160(c).

61. The statute authorizes *equitable* relief. The statute does not authorize *legal* relief—such as compensatory damages.

62. Despite this clear language, the Board and its current General Counsel have authorized its Regions to seek consequential or "compensatory" damages. *See Thryv, Inc.,* 372 NLRB No. 22, slip op. at 14 (Dec. 13, 2022), *vacated in part by Thryv, Inc. v. NLRB*, 102 F.4th 727 (5th Cir. 2024); *see also* Memorandum GC 21-06 (September 8, 2021) and Memorandum GC 21-07 (September 15, 2021).

63. In the Second Complaint, the Region is seeking consequential damages of an unspecified amount against Saint Vincent.

64. The Region continues to pursue consequential damages against employers, including Saint Vincent. *See* Memorandum GC 21-06 (September 8, 2021) and Memorandum GC 21-07 (September 15, 2021).

65. The fact that the underlying administrative complaint also seeks equitable relief does not strip Saint Vincent of its jury-trial right. *See Jarkesy,* 34 F.4th at 454 ("[T]he Seventh Amendment applies to proceedings that involve a mix of legal and equitable claims.").

66. Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "'here-and-now injury'" ripe for judicial intervention. *See Axon Enter., Inc.,* 598 U.S. at 191 (quoting *Seila Law LLC*, 591 U.S. at 212).

67. Saint Vincent is entitled to declaratory relief to ensure that it may have the opportunity to present its case against consequential damages to a jury of its peers.

68. Without interim injunctive relief, Saint Vincent may be ordered to pay damages to Charging Party without the appropriate safeguards a jury provides.

## COUNT IV - THE BOARD'S WIELDING OF EXECUTIVE, LEGISLATIVE, AND JUDICIAL AUTHORITY AND POWER VIOLATES THE FIFTH AMENDMENT TO THE CONSTITUTION

69. Saint Vincent restates and incorporates by reference the allegations of the preceding paragraphs 1-68, as if fully set forth herein.

70. The NLRB is an executive agency. 29 U.S.C § 153(a). It is not a part of the judiciary or legislature.

71. Under the Constitution, the judicial power belongs to Article III courts and cannot be shared with legislature or executive. *See Stern*, 564 U.S. at 482-83.

72. "Under 'the basic concept of separation of powers…that flow[s] from the scheme of a tripartite government' adopted in the Constitution, 'the judicial Power of the United States…can no more be shared' with another branch than' the Chief Executive, for example, can share with the Judiciary the veto power." *Id.* at 483 (alterations in original) (quoting *United States v. Nixon*, 418 U.S. 683, 704 (1974)).

73. However, as explained in Count III, *infra*, the Board recently took an adjudicatory role when it expanded its authority to award damages under the NLRA and made itself the body determining the amount of that award. *See Thryv, Inc.*, 372 NLRB No. 22; *see also* Memorandum GC 21-06 (September 8, 2021) and Memorandum GC 21-07 (September 15, 2021).

74. The ability to determine the appropriate amount of legal relief belongs to a jury, the function of the judiciary, not the executive.

75. By determining the amount of direct and foreseeable pecuniary and consequential damages in the Consolidated ULP Administrative Proceeding, Defendants, as executives, act as the judiciary.

76. In the same vein, it acted in a quasi-legislative role when it articulated a new interpretation of Section 10(c) of the Act which expressly authorizes the Board to issue an "order requiring [the] person to cease and desist from such unfair labor practice, and to take…affirmative action including reinstatement of employees with or without back pay," and no other remedies. 29 U.S.C. § 160(c).

77. By promulgating this new remedy, the Board essentially created its own rule and its own method of determining that remedy exercising all three powers at once.

78. "[A]n unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016).

79. Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "'here-and-now injury'" ripe for judicial intervention. *See Axon Enter., Inc.*, 598 U.S. at 191 (quoting *Seila Law LLC*, 591 U.S. at 212).

80. Saint Vincent is entitled to declaratory relief to ensure that its due process rights are not violated.

81. Without interim injunctive relief, Saint Vincent will be required to undergo an unconstitutional proceeding before an illegitimate decisionmaker.

82. Saint Vincent bears a strong likelihood of success on the merits for the reasons articulated above.

83. If the NLRB is not enjoined from proceeding against Saint Vincent in the related unfair labor practice hearing, Saint Vincent will be irreparably harmed because it will have endured a proceeding led by individuals who serve as executives, legislators, and judges in violation of the separation of powers.

84. The balance of equities tips in Saint Vincent's favor because, should the NLRB proceeding go forward, Saint Vincent will lose its right to undergo a constitutional proceeding, an injury "impossible to remedy once the proceeding is over," and "[j]udicial review of [its] structural constitutional claims would come too late to be meaningful." *See Axon Enter., Inc.*, 598 U.S. at 191.

85. It is in the public interest to remedy the unconstitutional procedures here in order to protect Americans' constitutional rights.

## **REQUEST FOR RELIEF**

WHEREFORE, Saint Vincent respectfully requests that the Court order the following relief and enter judgment:

1. Declaring that:

    a.    The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB ALJs, including 5 U.S.C. § 7521(a) are unconstitutional;

    b.    The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB Members, including 29 U.S.C. § 153(a), are unconstitutional; and

    c.    The NLRB proceeding against Saint Vincent deprives it of its constitutional right to a trial by jury.

2.    Preliminarily enjoining Defendants from subjecting Saint Vincent to unconstitutionally structured administrative proceeding pending the final resolution of this action;

3.    Permanently enjoining Defendants from implementing or carrying out the unconstitutional removal-protection provisions identified above;

4.    Awarding Saint Vincent its costs and expenses incurred in bringing this action, including but not limited to, reasonable attorneys' fees; and

5.    Awarding such other and further relief, whether at law or in equity, as the Court deems just and proper.

Dated: September 9, 2024                    Respectfully submitted,

                                                FORD & HARRISON LLP

                                                By:  *s/ Jacquelyn L. Thompson*

                                                JACQUELYN THOMPSON
                                                DC Bar No. 988663
                                                FORDHARRISON LLP
                                                2000 M Street NW, Suite 505
                                                Washington, DC 20036
                                                Telephone: (202) 719-2000

                                                *Attorney for Plaintiff Saint Vincent Hospital*