## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **VHS ACQUISITION SUBSIDIARY NUMBER 7, INC. d/b/a SAINT VINCENT HOSPITAL**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and SUSANNAH MERRITT in her official capacity as an Administrative Law Judge of the National Labor Relations Board,**<br><br>      **Defendants.** | Case No. 1:24-cv-02577-TNM |

**PLAINTIFF VHS ACQUISITION SUBSIDIARY NUMBER 7, d/b/a SAINT VINCENT HOSPITAL'S MOTION FOR SUMMARY JUDGMENT AS TO ITS REQUEST FOR A PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT**

Plaintiff VHS Acquisition Subsidiary Number 7, Inc. d/b/a Saint Vincent Hospital ("Saint Vincent") hereby moves, pursuant to Fed. R. Civ. P. 56 and 65 and Local Rule 7(h), for summary judgment on its request that the Court enter an order preliminarily enjoining ongoing administrative proceedings against Saint Vincent, to be entered against the National Labor Relations Board ("NLRB"), NLRB General Counsel Jennifer Abruzzo, NLRB Chairperson Lauren M. McFerran, NLRB Member Marvin E. Kaplan, NLRB Member Gwynne A. Wilcox, NLRB

Member David M. Prouty, and Administrative Law Judge Susannah Merritt, who has been assigned to preside over the administrative hearing (collectively, "Defendants").

Summary judgment is appropriate as there is no genuine dispute as to any material fact that Sant Vincent has established it is likely to succeed on the merits of its constitutional claims, it is likely to suffer irreparable harm in the absence of the Court granting the requested relief, the balance of equities favors Saint Vincent, and an injunction is in the public interest.

The grounds for this Motion are set forth in detail in Saint Vincent's Statement of Materials Facts as to Which There is No Genuine Issue and Saint Vincent's Memorandum of Law in Support of its Motion for Summary Judgment, which are contemporaneously filed herewith.

Dated: September 20, 2024               Respectfully submitted,

                                        FORD & HARRISON LLP

                                        By:    *s/ Jacquelyn L. Thompson*

                                        JACQUELYN L. THOMPSON
                                        DC Bar No. 988663
                                        FORD & HARRISON LLP
                                        2000 M Street NW, Suite 505
                                        Washington, DC 20036
                                        Telephone: (202) 719-2000

                                        *Attorney for Saint Vincent*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY  that  on  September 20, 2024 a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF, which will send a notice of electronic filing to all counsel of record.

*s/ Jacquelyn L. Thompson*
Attorney for Saint Vincent

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VHS ACQUISITION SUBSIDIARY NUMBER 7, INC. d/b/a SAINT VINCENT HOSPITAL**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and SUSANNAH MERRITT in her official capacity as an Administrative Law Judge of the National Labor Relations Board,**<br><br>      **Defendants.** | Case No. 1:24-cv-02577-TNM |

**PLAINTIFF VHS ACQUISITION SUBSIDIARY NUMBER 7, d/b/a SAINT VINCENT HOSPITAL'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO ITS REQUEST FOR A PRELIMINARY INJUNCTION**

Pursuant to Fed. R. Civ. P. 56 and 65 and Local Rule 7(h), Plaintiff VHS Acquisition Subsidiary Number 7, Inc. d/b/a Saint Vincent Hospital ("Saint Vincent") hereby submits this Memorandum of Law in support of its Motion for Summary Judgment on its request that the Court enter an order preliminarily enjoining ongoing administrative proceedings against Saint Vincent, to be entered against the National Labor Relations Board ("Board" or "NLRB"), NLRB General Counsel Jennifer Abruzzo ("Abruzzo"), NLRB Chairperson Lauren M. McFerran ("McFerran"),

NLRB Member Marvin E. Kaplan ("Kaplan"), NLRB Member Gwynne A. Wilcox ("Wilcox"), NLRB Member David M. Prouty ("Prouty") (McFerran, Kaplan, Wilcox, and Prouty, collectively, "Board Members"), and Administrative Law Judge Susannah Merritt ("Merritt"), who has been assigned to preside over the administrative hearing (collectively, "Defendants"). The administrative hearing began on September 9, 2024, continued on September 12 and 13, 2024, and is scheduled to continue again on September 24, 26, 27, and 28, 2024 and October 21, 22, and 23, 2024. There is no genuine dispute as to any material fact that Sant Vincent has established that it is likely to succeed on the merits of its constitutional claims, it is likely to suffer irreparable harm in the absence of the Court granting the requested relief, the balance of equities favors Saint Vincent, and an injunction is in the public interest.

## I.     INTRODUCTION

On September 9, 2024, Saint Vincent filed its Complaint for Declaratory and Injunctive Relief (Doc. 1 ("Complaint")) and its Motion for a Temporary Restraining Order and Preliminary Injunction and Memorandum in Support (Doc. 3 ("Motion for TRO and PI")).  In this suit, Saint Vincent is seeking declaratory relief and to enjoin Defendants from pursuing an unconstitutionally structured administrative proceeding against it.  *See* Docs. 1, 3.  Relevant to the instant Motion, Saint Vincent seeks summary judgment on its request for a preliminary injunction to halt the underlying administrative proceeding while this lawsuit is pending.  In that regard, Saint Vincent is asking this Court to do what other courts have already done.  *See Space Expl. Technolo-Gies Corp. v. NLRB*, No. W-24-CV-00203-ADA, 2024 WL 3512082 (W.D. Tex. July 23, 2024) ("*SpaceX*"), *appeal filed* No. 24-50627 (5th Cir. Aug. 1, 2024); *Energy Transfer LP v. NLRB*, No. 3:24-CV-00198, 2024 WL 3571494 (S.D. Tex. July 29, 2024); *Aunt Bertha v. NLRB*, No. 4:24-cv-00798-P, 2024 WL 4202383 (N.D. Tex. Sept. 16, 2024).  Saint Vincent is clearly able to

demonstrate that there is no genuine dispute as to any material fact as to its entitlement to injunctive relief.

First, there is no genuine dispute as to any material fact that Saint Vincent is likely to succeed on the merits of its constitutional claims that: the NLRB's ALJs are unconstitutionally insulated from removal; Saint Vincent is being deprived of its right to a jury trial regarding legal remedies sought by the NLRB; and the structure of the NLRB violates the separation of powers and Saint Vincent's due process rights. Second, there is no genuine dispute as to any material fact that Saint Vincent is likely to suffer both constitutional and economic harm due to the very nature of the proceedings it is subject to and the damages sought against it. Third, there is no genuine dispute as to any material fact that the balance of equities tips in Saint Vincent's favor because it stands to be stripped of its constitutional rights while Defendants stand to lose nothing. Fourth and finally, there is no genuine dispute as to any material fact that it is in the public's interest to establish constitutional proceedings.

Absent injunctive relief, Saint Vincent will also suffer the practical harms of undergoing an extensive administrative proceeding that distracts from its critical mission of providing health care to the public as well as being improperly labeled an offender of labor law through an unconstitutionally structured proceeding. This harm will be irreparable. Accordingly, Saint Vincent respectfully requests this Court grant its Motion for Summary Judgment as to its Request for a Preliminary Injunction.

## II.      STATEMENT OF UNDISPUTED MATERIAL FACTS

Saint Vincent is an acute-care hospital located in Worcester, MA. Doc. 3-1 at ¶ 2. Nurses at Saint Vincent are represented by a union, the Massachusetts Nurses Association ("MNA" or "Union"). *Id.* at ¶ 3.

The underlying administrative proceeding arises out of unfair labor practice charges filed by MNA against Saint Vincent, all of which are the subject of a hearing before a Board ALJ that began on September 9, 2024, continued on September 12 and 13, 2024, and is scheduled to continue thereafter on September 23, 25, 26, and 27, 2024 and October 21, 22, and 23, 2024. *Id.* at ¶¶ 4, 12. On March 13, 2024, ***over two years*** after MNA filed its first unfair labor practice charge, the Regional Director for Region 1 issued the Consolidated Complaint and Notice of Hearing (the "First Complaint"). *Id.* at ¶ 5. The First Complaint also provided notice that "a hearing will be conducted before an administrative law judge of the National Labor Relations Board" on June 18, 2024. *Id.* Saint Vincent timely filed its answer and defenses on March 27, 2024. *Id.* On May 13, 2024, the NLRB's Division of Judges assigned ALJ Lisa Friedheim-Weis to the case. *Id.* at ¶ 6.

On May 23, 2024, the Regional Director for Region 1 issued the Second Consolidated Complaint and Notice of Hearing (the "Second Complaint"). *Id.* at ¶ 7. The Second Complaint alleges Saint Vincent violated Sections 8(a)(1), (3), (4), and (5) of the National Labor Relations Act ("NLRA" or "Act") by: denying Union representatives access to Saint Vincent and unilaterally changing its policy regarding Union access to Saint Vincent; unilaterally implementing bonus programs and failing to make bonus payments to employees; failing to furnish the Union with information requested by the Union; denying the majority of grievances filed by the Union on procedural grounds; designating its Labor Relations Director as the Hospital's sole designee for all steps of the contractual grievance procedure; and refusing to allow two separate third parties to administer arbitrations filed by MNA against Saint Vincent. *See generally id.* at pp. 6–18.

In the Second Complaint, the Regional Director for Region 1 seeks the following legal relief: (1) compensation for "all affected employees for any direct or foreseeable pecuniary harms

incurred as a result of [Saint Vincent's alleged] denial of the majority of grievances on procedural grounds" and costs incurred for same; (2) compensation to the Union for "any costs it incurred as a result of [Saint Vincent's alleged] failure to continue in effect all the terms and conditions of the parties' collective bargaining agreement by refusing to allow the Labor Relations Connection (LRC) and the American Arbitration Association (AAA) to administer arbitrations after the selection of arbitrators"; and (3) compensation for "affected employees for any direct or foreseeable pecuniary harms incurred as a result of [Saint Vincent's alleged] changes to [the] shift bonus incentive program, [the] winter market incentive bonus program, and [the] switch shift incentive program." *Id*. at ¶ 8.  Saint Vincent timely filed its answer and defenses to the Second Complaint on June 6, 2024. *Id*. at ¶ 9.

On June 14, 2024, Saint Vincent filed a motion to postpone the hearing, due to the unavailability of a subpoenaed witness. *Id*. at ¶ 10.  By order dated June 16, 2024, ALJ Friedheim-Weis postponed the hearing and by order dated June 18, 2024, she rescheduled the hearing to open on September 9, 2024. *Id*.

On August 5, 2024, ALJ Friedheim-Weis notified the parties a new ALJ would be assigned. *Id*. at ¶ 11.  The NLRB's Division of Judges assigned ALJ Susannah Merritt to the case on August 13, 2024. *Id*.  On August 21, 2024, ALJ Merritt issued another scheduling order, providing:

> the hearing in the above referenced case will open via Zoom videoconference at 9:00 a.m. eastern time on Monday, September 9, 2024, but only for my opening statement, notices of appearance of counsel for the record, and the production of subpoenaed documents. The hearing will reconvene at 9:00 a.m. eastern time at the Thomas P. O'Neill Jr. Federal Building, 10 Causeway Street, Suite 1002, Boston, Massachusetts, on Thursday, September 12, through Friday, September 13, 2024.  The hearing will continue at the same location in Boston, Massachusetts, on Monday, September 23, through Friday, September 27 (excluding Tuesday, September 24, 2024) and again on Monday, October 21, through Wednesday, October 23, 2024.

*Id.* at ¶ 12.

On September 9, 2024, Saint Vincent filed its Complaint seeking declaratory and injunctive relief and its Motion for TRO and PI with this Court. Docs. 1, 3. On September 10, 2024, the Court issued an Order scheduling an in-person hearing for the same day on the Motion for TRO and PI. Doc. Minute Order, September 10, 2024. On the same day after the hearing occurred, the Court denied Saint Vincent's request for a temporary restraining order but ordered Saint Vincent to file a motion for summary judgment as to its request for a preliminary injunction no later than September 20, 2024. Doc. Minute Entry, September 10, 2024. On September 20, 2024, Saint Vincent filed its Notice of Voluntary Dismissal without Prejudice of Count II in the Complaint in which Saint Vincent voluntarily dismissed its claim that the NLRB's Board members are unconstitutionally insulated from removal. *See* Doc. 11 ("Notice of Dismissal"). The Court subsequently order the dismissal.

Following the Notice of Dismissal, there are only three constitutional claims raised by Saint Vincent that are now part of the Complaint to which Saint Vincent is requesting a preliminary injunction: (1) Count I – the NLRB's ALJs are unconstitutionally insulated from the President's removal powers; (2) Count III – the NLRB's ALJs adjudicate private rights without a jury trial in violation of the Seventh Amendment to the United States Constitution; and (3) Count IV – the NLRB's wielding of executive, legislative, and judicial authority and power violates the Fifth Amendment to the United States Constitution. *See* Docs. 1, 3, 11.

## III.   ARGUMENT

Saint Vincent is entitled to judgment as a matter of law as to its request for a preliminary injunction because there is no genuine dispute as to any material fact that Saint Vincent can satisfy the elements to obtain a preliminary injunction. *See Rhodes v. Fed. Bureau of Investigation*, 316

F. Supp. 3d 173, 176 (D.D.C. 2018) ("Summary judgment is appropriate where the record shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.").

To obtain a preliminary injunction, Saint Vincent must show: (1) it is likely to succeed on the merits of its constitutional claims; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008); *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011).  The undisputed facts in the record affirmatively establish that Saint Vincent will succeed on all these elements.  Thus, summary judgment is due to be granted in favor of Saint Vincent on its request for a preliminary injunction.

### a.   There is no Disputed Fact that Saint Vincent is Likely to Succeed on the Merits of the Three Constitutional Claims.

As recognized by then-Circuit Judge Kavanaugh, independent agencies that exercise executive power, such as the NLRB,

> collectively constitute, in effect, a headless fourth branch of the U.S. Government.  They hold enormous power over the economic and social life of the United States.  Because of their massive power and the absence of Presidential supervision and direction, independent agencies pose a significant threat to individual liberty and to the constitutional system of separation of powers and checks and balances.

*See PHH Corp. v. Consumer Fin. Protect. Bureau*, 881 F.3d 75, 165 (D.C. Cir. 2018) (Kavanaugh, J., dissenting), *abrogated by Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020).

Against this backdrop recognizing the dangers of administrative agencies, Saint Vincent alleges in this lawsuit that the NLRB's structure is unconstitutional in three separate ways.  While Saint Vincent believes that summary judgment is appropriate on all three of its constitutional

claims, the Court need only find merit on one of those claims to issue the preliminary injunction sought here.

### i.  NLRB ALJs are Unconstitutionally Insulated From Removal.

Article II of the Constitution gives the President authority to appoint officers and inferior officers of the United States. *See* U.S. Const. Art. II, § 2.  ALJs function as inferior officers of an executive agency. *See* U.S. Const. Art. II, § 2; *see also Lucia v. SEC*, 585 U.S. 237, 251 (2018); *Fleming v. United States Dep't of Agric.,* 987 F.3d 1093, 1103 (D.C. Cir. 2021); *Westrock Servs., Inc.*, 366 NLRB No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]"). Inferior officers "are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy v. SEC,* 34 F.4th 446, 464 (5th Cir. 2022), *affirmed on other grounds by* 144 S. Ct. 2117 (2024); *see also Al Bahlul v. United States,* 967 F.3d 858, 869 (D.C. Cir. 2020) (alterations in original) (quoting *Lucia,* 585 U.S. at 245) ("In the constitutional context, an 'officer' is someone who 'occup[ies] a continuing position established by law' and who 'exercis[es] significant authority pursuant to the laws of the United States.'").

The NLRB appoints ALJs, but ALJs may only be removed "for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the [Merit Systems Protection] Board." *See* 5 U.S.C. § 7521(a); *see also Fleming*, 987 F.3d at 1105 (Rao, J., concurring in part and dissenting in part).  And, Members of the Merit Systems Protection Board ("MSPB") are removable only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).   Further, "[i]f principal officers cannot intervene in their inferior officers' actions except in rare cases, the President lacks the control necessary to ensure that the

laws are faithfully executed." *Jarkesy*, 34 F.4th at 464; *see also Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 495–96 (2010).

Saint Vincent is likely to succeed on the merits of its constitutional challenge to the removal protections for the NLRB ALJs. In *Free Enterprise Fund*, the Supreme Court considered the constitutionality of two layers of for-cause protection for members of the Public Company Accounting Oversight Board ("PCAOB"). *See* 561 U.S. at 483–84. The members of the PCAOB answered to the Commissioners of the Securities and Exchange Commission ("SEC"). *Id*. at 484. But the SEC could remove them only for "willful violations of the [Sarbanes–Oxley] Act, Board rules, or the securities laws; willful abuse of authority; or unreasonable failure to enforce compliance—as determined in a formal Commission order, rendered on the record and after notice and an opportunity for a hearing." *Id*. at 503. On top of that, the President could only remove SEC Commissioners for "'inefficiency, neglect of duty, or malfeasance in office.'" *Id*. at 487 (quoting *Humphrey's Executor v. United States*, 295 U.S. 602, 620 (1935)). The Supreme Court held that this extensive system insulating PCAOB members from removal deprived the President of the ability to adequately oversee the actions of PCAOB members. *Id*. at 492.

The Fifth Circuit applied the principles in *Free Enterprise Fund* to the appointment of SEC ALJs and found that they were also improperly insulated from adequate Presidential oversight. In *Jarkesy*, the Fifth Circuit held that the indistinguishable "statutory removal restrictions for SEC ALJs are unconstitutional." 34 F.4th at 463. Under 5 U.S.C. § 7521(a), "SEC ALJs may be removed by the Commission 'only for good cause established and determined by the Merit Systems Protections Board (MSPB) on the record after opportunity for hearing before the Board.'" *Id*. at 464 (quoting 5 U.S.C. § 7521(a)). And the Fifth Circuit determined SEC Commissioners and MSPB members themselves "may only be removed by the President for good cause." *Id*. The SEC

ALJs were "sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Id.* But these multiple "layers of for-cause protection"—for the SEC Commissioners and the MSPB members—unconstitutionally "stand in the President's way." *Id*. at 465.

The Fifth Circuit's reasoning in *Jarkesy* is persuasive as a synthesis of current Supreme Court precedent. There is no relevant difference between SEC ALJs and NLRB ALJs.  Both are "inferior officers" who "have substantial authority" in agency investigations and enforcement actions. *See id.* at 464; *see also Westrock Servs., Inc.*, 366 N.L.R.B. No. 57, slip op. at *1 ("Board judges, like SEC judges, are inferior officers[.]"). As stated about SEC ALJs in *Jarkesy*, NLRB ALJs also "are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions" as NLRB ALJs "exercise considerable power over administrative case records by controlling the presentation and admission of evidence; they may punish contemptuous conduct; and often their decisions are final and binding." *See* 34 F.4th at 464; *see also Alpine Sec. Corp. v. Fin. Indus. Regulatory Auth.*, No. 23-5129, 2023 WL 4703307, at *3 (D.C. Cir. July 5, 2023) (internal quotation marks omitted) (Walker, J., concurring) ("In other words, if the ALJs in *Lucia* exercised 'significant' executive power, then FINRA hearing officers probably do too.").

And like SEC ALJs, NLRB ALJs are covered by "at least two layers of for-cause protection" that "stand in the President's way." *See Jarkesy*, 34 F.4th at 465. Indeed, 5 U.S.C. § 7521(a), which allows an employing agency to remove its ALJs only when the MSPB finds good cause, applies equally to both sets of ALJs; and 5 U.S.C. § 1202(d) applies equally to the MSPB members in both cases as well.  Further, the Act also explicitly creates removal protection for NLRB Board members as they are removable only "for neglect of duty or malfeasance in office,

but for no other cause." 29 U.S.C. § 153(a). So, like the SEC ALJs, NLRB ALJs are unconstitutionally insulated from the President's oversight by multiple layers of removal protections. *See Jarkesy*, 34 F.4th at 464–65.

Similarly, the concurrence in *Alpine Securities Corp.* further supports Saint Vincent's position that it is likely to succeed on the merits of its claim. In that case, the plaintiff sought an emergency motion for injunction pending an appeal on grounds, very similar to Saint Vincent here, that the Financial Industry Regulatory Authority's ("FINRA") hearing officers "impermissibly wield executive power that may be exercised only by the President and officers under his supervision." *See* 2023 WL 4703307, at *1 (Walker, J., concurring). Judge Walker was skeptical of the FINRA's ability to prevail in defending against the two layers of for cause removal for its hearing officers. *See id.* at *3 (Walker, J., concurring) ("FINRA might prevail on those issues, but on the briefing before us, that seems unlikely."). Similarly, Judge Walker was concerned that "two layers of removal protection—one for the Commissioners and one for the hearing officers . . . may well infringe on the President's 'ability to execute the laws . . . by holding his subordinates accountable for their conduct.'" *See id.* (Walker, J., concurring) (alteration in original) (quoting *Free Enter. Fund*, 561 U.S. at 496).

Here, Judge Walker's analysis of the constitutionality of the removal protections afforded to FINRA hearing officers is identical to the issue raised by Saint Vincent with NLRB ALJs. Analogizing Judge Walker's reasoning with regard to FINRA hearing officers to the NLRB,

> [t]here is a serious argument that [NLRB ALJs] exercise significant executive power. And it is undisputed that they do not act under the President. That may be a constitutional problem. The Court is right to grant an injunction . . . to let [a plaintiff] litigate its case against [the NLRB].

*See id.* at *4 (Walker, J., concurring).

Recently, three federal district courts—the U.S. District Court for the Western District of Texas, the U.S. District Court for the Southern District of Texas, and the U.S. District Court for the Northern District of Texas—applied the principles in *Jarkesy* (and by extension *Free Enterprise Fund*) to the NLRB's ALJs.  First, in *SpaceX*, the employer sought relief in the form of declaratory judgment declaring the NLRB ALJs and NLRB Board members unconstitutional, and a preliminary injunction enjoining Defendants from subjecting the employer to unconstitutionally structured administrative proceedings. 2024 WL 3512082, at *2. The Court in *SpaceX* found that NRLB ALJs "are 'inferior officers' who 'have substantial authority' in agency investigations and enforcement actions." *Id*. at *3 (quoting *Jarkesy*, 34 F.4th at 464) (citing *Westrock Servs., Inc.*, 366 N.L.R.B. No. 57, slip op. at *1).  As the district court in *SpaceX* observed, both "[t]he SEC and NLRB ALJS are only to be removed when the MSPB finds good cause." *Id.* (citing 5 U.S.C. § 7521(a)). "Further, the MSPB members may only be removed by the President for 'inefficiency, neglect of duty, or malfeasance in office.'" *Id*. (quoting 5 U.S.C. § 1202(d)). As a consequence, the district court in *SpaceX* found "there is a substantial likelihood that SpaceX succeeds on the merits with regards to showing that the NLRB ALJs are unconstitutionally protected from removal." *Id*.

Then, in *Energy Transfer LP*, another federal court agreed with the *SpaceX* court by entering a preliminary injunction against the NLRB, holding "[plaintiff] will likely show that the removal protections afforded to NLRB ALJs are unconstitutional . . . [s]o [plaintiff] will likely succeed on the merits." *See* 2024 WL 3571494, at *2.  And then in *Aunt Bertha*, a third federal court also entered a preliminary injunction on the grounds that "NLRB ALJs are afforded the same two layers of for-cause removal protections that the Fifth Circuit found to be unconstitutional with regard to the SEC ALJs."  *See* 2024 WL 4202383, at *2.  The *Aunt Bertha* court even recognized

12

the same argument Saint Vincent is advancing in that "the NLRB has not, and cannot, offer any distinction between the relevant provisions or the protections they confer upon the ALJs" when comparing NLRB ALJs with SEC ALJs.  *See id.*[1]

At the hearing on the Motion for TRO and PI, Defendants argued the ALJ removability issue is settled law.  Quite the contrary, as there is a circuit split on this issue.  However, decisions from the Sixth, Ninth, and Tenth Circuits are unpersuasive in determining whether NLRB ALJs are unconstitutionally insulated from removal.

First, in addressing the structure of ALJs within the Federal Deposit Insurance Corporation ("FDIC"), the Sixth Circuit noted that the FDIC ALJs "file a recommended decision that is subject to review by the FDIC Board."  *See Calcutt v. Fed. Deposit Ins. Corp.*, 37 F.4th 293, 319 (6th Cir. 2022), *reversed in part on other grounds by* 598 U.S. 623 (2023).  Specifically, the ALJs file "a recommended decision, recommended findings of fact, recommended conclusions of law, and a proposed order."  *Id.* at 302 (citing 12 C.F.R. § 308.38(a)).  The FDIC Board then "reviews the

---

[1] *But see Nexstar Media, Inc. Grp. v. NLRB*, No. 4:24-cv-01415, 2024 WL 4127090, at *5 (N.D. Ohio Aug. 26, 2024) (motion for temporary restraining order and preliminary injunction denied on jurisdictional grounds).  The decision in *Nexstar Media* is in conflict with Supreme Court case law holding that a party can raise a constitutional challenge to an administrative agency's structure in federal district court.  *See Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023) ("[T]he review schemes set out in the Exchange Act and the FTC Act do not displace district court jurisdiction over Axon's and Cochran's far-reaching constitutional claims."); *Collins v. Yellen*, 594 U.S. 220, 245 (2021) ("[W]henever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge."); *Seila Law LLC*, 591 U.S. at 212 (internal quotation marks and citations omitted) (alteration in original) ("Our precedents have long permitted private parties aggrieved by an official's exercise of executive power to challenge the official's authority to wield that power while insulated from removal by the President. Indeed, we have expressly reject[ed] the argument that consideration of the effect of a removal provision is not ripe until that provision is actually used, because when such a provision violates the separation of powers it inflicts a here-and-now injury on affected third parties that can be remedied by a court."); *Free Enter. Fund*, 561 U.S. at 491 (the Securities Exchange Act did not strip the district court of jurisdiction over the petitioners' constitutional claims).  Thus, the Court should not follow the *Nexstar Media* decision in the instant matter.

ALJ's recommendations and issues a final decision" that is "based upon review of the entire record of the proceedings." *Id.* (internal quotation marks omitted) (citing 12 C.F.R. § 308.40). With the NLRB ALJs, however, absent exceptions filed by one of the parties, "the findings, conclusions, and recommendations contained in the [ALJ's] decision will, pursuant to Section 10(c) of the Act, automatically become the decision and order of the Board and become its findings, conclusions, and order." *See* 29 C.F.R. § 102.48(a). Thus, the decisions of the FDIC ALJs are subject to review by the FDIC Board in all cases, whereas decisions by NLRB ALJs are not automatically entitled to review by the NLRB Board members unless a party files objections and exceptions, which results in NLRB ALJs having a greater degree of decisional authority than FDIC ALJs.

Second, the Ninth Circuit addressed the removability of ALJs within the Department of Labor ("DOL"). *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1133 (9th Cir. 2021). Notably, DOL ALJs "make decisions that are subject to vacatur by people without tenure protection." *See id.* at 1135. Stated differently, the DOL ALJs are overseen by officers who are removable at-will by the President. *See id.* (internal quotation marks and citation omitted) (the board members reviewing the ALJ's decision "serve at the pleasure of the Secretary of Labor" and "because the Secretary of Labor is subject to at-will removal by the President . . . the President has direct control over [board] members through the Secretary—his alter ego"). Conversely, the decisions made by NLRB ALJs, when in fact they are reviewed by the NLRB Board members, are reviewed by people who are not removable at the will of the President. *See* 29 U.S.C. § 153(a); *see also Cortes v. NLRB*, No. 23-2954 (JEB), 2024 WL 1555877, at *1 (D.D.C. Apr. 10, 2024) (quoting 29 U.S.C. § 153(a)) (Chief Judge Boasberg of this Court holding that the President may remove members of the NLRB "only 'for neglect of duty or malfeasance in office'").

Third, the Tenth Circuit addressed the removability of ALJs with the Consumer Product Safety Commission ("CPSC").  *See Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 763 (10th Cir. 2024).  As a threshold matter, the Tenth Circuit relied upon the Ninth Circuit's decision in *Decker Coal Co.* (*see id.* at 764), which as discussed above is unpersuasive when comparing NLRB ALJs to the ALJs at issue in *Decker Coal Co.*  Additionally, the Tenth Circuit incorrectly focused on what it referred to as the "purely adjudicatory" role of the CPSC ALJs.  *See id.* (internal quotation marks omitted).  However, there is no adjudication-based exception to the President's removal power.  *See Myers v. United States*, 272 U.S. 52, 135 (1926) (President's removal power applies to individuals exercising "duties of a quasi judicial character imposed on executive officers and members of executive tribunals whose decisions after hearing affect interests of individuals"); *see also Lucia*, 585 U.S. at 241 (noting "[o]ne way" in which government agencies can "enforce the nation's . . . laws" is by having ALJs preside over "an administrative proceeding against an alleged wrongdoer"); *Fleming* 987 F.3d at 1115 (Rao, J., concurring in part and dissenting in part) (internal citation omitted) ("ALJs exercise the Article II executive power on behalf of the President.  To be sure, ALJs perform adjudicative functions and use adjudicatory procedures to execute the law.  Whatever methods or functions are employed, however, officers of the Executive Branch cannot exercise anything but executive power[.]").  Thus, the Tenth Circuit's misplaced reliance on this "purely adjudicatory" exception ignores express guidance from the Supreme Court that the relevant inquiry focuses on the ALJs role as part of an executive agency. *See Seila Law LLC*, 591 U.S. at 216 n.2 (quoting *City of Arlington v. FCC*, 569 U.S. 290, 305 n.4 (2013)) ("[E]ven though the activities of administrative agencies 'take legislative and judicial

forms,' 'they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the executive Power.'").[2]

The procedural posture of the underlying NLRB administrative proceeding against Saint Vincent, and the relief requested by Saint Vincent here, are functionally identical to the *SpaceX*, *Energy Transfer LP*, and *Aunt Bertha* cases. Saint Vincent respectfully requests this Court to immediately and preliminarily enjoin the NLRB ALJ assigned to this case—ALJ Susannah Merritt—from holding proceedings against Saint Vincent until final resolution of Saint Vincent's request for declaratory relief.[3]

### ii. The NLRB's Adjudication of Private Rights and Legal Relief Violates the Seventh Amendment.

The NLRB is statutorily limited to providing public relief.  However, it recently authorized Regions to seek "private relief," which must be determined by a jury. *See Thryv, Inc.*, 372 NLRB

---

[2] Two other recent district court decisions found that the companies failed to establish a likelihood of success on the merits that the removal procedures for NLRB ALJs are unconstitutional.  *See Alivio Med. Ctr. v. NLRB*, No. 24-cv-7217, 2024 WL 4188068, at *11 (N.D. Ill. Sept. 13, 2024); *Yapp USA Auto. Sys., Inc. v. NLRB*, No. 24-12173, 2024 WL 4119058, at *8 (E.D. Mich. Sept. 9, 2024), *appeal filed* No. 24-1754 (6th Cir. Sept. 9, 2024).  These two cases, however, are plagued by the same infirmities discussed above as the decisions relied upon *Calcutt*, *Decker Coal Co.*, and *Leachco, Inc.  See Alivio Med. Ctr.*, 2024 WL 4188068, at *10–11; *Yapp USA Auto. Sys., Inc.*, 2024 WL 4119058, at *7–8.  Thus, the Court should decline to follow *Alivio Med. Ctr.* and *Yapp USA Auto. Sys., Inc.*, and follow the reasoning of the courts in *SpaceX*, *Energy Transfer LP*, and *Aunt Bertha*, which applied the Fifth Circuit's decision in *Jarkesy* that relied on Supreme Court guidance from *Free Enterprise Fund.  See Aunt Bertha*, 2024 WL 4202383, at *2; *Energy Transfer LP*, 2024 WL 3571494, at *2; *SpaceX*, 2024 WL 3512082, at *3.

[3] The Supreme Court has held that there are two exceptions to the President's removal power: "one for multimember expert agencies that do not wield substantial executive power, and one for inferior officers with limited duties and no policymaking or administrative authority." *Seila Law LLC*, 591 U.S. at 218; *see also Meta Platforms, Inc. v. FTC*, No. 23-3562 (RDM), 2024 WL 1121424, at *13 (D.D.C. Mar. 15, 2024), *appeal filed* No. 24-5054 (D.C. Cir. Mar. 15, 2024). However, neither of these exceptions apply here because NLRB ALJs are not a "multimember expert agenc[y]," and they possess vast "administrative authority." *See Seila Law LLC*, 591 U.S. at 218; *see also Cortes*, 2024 WL 1555877, at *5.

No. 22, at *13–14 (Dec. 13, 2022), *vacated in part by Thryv, Inc. v. NLRB*, 102 F.4th 727 (5th Cir. 2024); *see also* Memorandum GC 21-06 (Sept. 8, 2021) and Memorandum GC 21-07 (Sept. 15, 2021).

The Seventh Amendment protects the sacred right to trial by jury. It provides:

> [i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

U.S. Const. Amend. VII. The Supreme Court has found "'Suits at common law' to include all actions akin to those brought at common law as those actions were understood at the time of the Seventh Amendment's adoption." *Jarkesy*, 34 F.4th at 452 (citing *Tull v. United States,* 481 U.S. 412, 417 (1987)); *see also Hobson v. Brennan,* 637 F. Supp. 173, 175 (D.D.C. 1986). "The term can include suits brought under a statute as long as the suit seeks common-law-like legal remedies." *Jarkesy*, 34 F.4th at 452; *see also Tull*, 481 U.S. at 425; *McDonald v. Artcracft Elec. Supply Co.*, 774 F. Supp. 29, 35 (D.D.C. 1991). Cases seeking legal relief "must be tried under the auspices of an Article III court." *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989). Accordingly, Saint Vincent is entitled to a jury trial if the General Counsel seeks legal relief against it. "Compensatory damages," or "monetary relief for all losses . . . sustained as a result of the alleged breach of . . . duties" are "the classic form of legal relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993); *see also Int'l Bhd. of Painters and Allied Trades Union & Indus. Pension Plan v. Duval*, No. 92-1099 (JHG), 1994 WL 903314, at *7 (D.D.C. Apr. 14, 1994).

The NLRA only provides for equitable relief.  The Board is only authorized to remedy unfair labor practices through an "order requiring [the] person to cease and desist from such unfair labor practice, and to take . . . affirmative action including reinstatement of employees with or

without back pay." 29 U.S.C. § 160(c) ("Section 10(c)"). The Supreme Court has permitted only reinstatement and backpay under Section 10(c). The Court has held that "because claims seeking statutory remedies for violations of the Act were 'statutory proceeding[s]' that were 'unknown to the common law,' they were not 'suit[s] at common law' within the meaning of the Seventh Amendment." C. Nelson, *Adjudication in the Political Branches*, 107 Colum. L. Rev. 559, 602 (2007) (alterations in original) (quoting *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937)). The holding in *Jones & Laughlin Steel Corp.* did not consider or permit consequential damages. The Supreme Court explained "[r]einstatement of the employee and payment for time lost are requirements imposed for violation of the statute and are remedies appropriate to its enforcement." *Jones & Laughlin Steel Corp.*, 301 U.S. at 48–49.

Here, the General Counsel seeks damages against Saint Vincent well beyond what is authorized by the NLRA and the Constitution. The statute simply authorizes equitable relief—it does not permit legal relief such as compensatory damages.  Despite the clear and unambiguous statutory language, the Board has authorized its Regional Offices to seek consequential or "compensatory" damages. *See Thryv, Inc.*, 372 NLRB No. 22, at *13-14. The consequential damages the Board now permits may include "interest and late fees on credit cards"; "credit card debt"; penalties on "early withdrawals from [a] retirement account"; compensation for the loss of a "car or [] home," if the discriminatee "is unable to make loan or mortgage payments"; "increased transportation or childcare costs"; or "out-of-pocket medical expenses." *Id.* at *15. In an unpersuasive effort to avoid authorizing unconstitutional consequential damages, the Board explained:

> [W]e stress today that the Board is not instituting a policy or practice of awarding consequential damages, a legal term of art more suited for the common law of torts and contracts. Instead, we ground our decision in the make-whole principles of Section 10(c) of the Act…

> and our affirmative duty to rectify the harms caused by a
> respondent's unfair labor practice by attempting to restore the
> employee to the situation they would have been in but for that
> unlawful conduct.

*Id.* at *14.

However, in reality, the Board simply authorized legal relief by calling it, without any justification, equitable relief. As the Supreme Court has stated, "liability of one individual to another under the law" concerns a "private right." *See Stern v. Marshall*, 564 U.S. 462, 489 (2011). Tellingly, the Fifth Circuit was not persuaded by the Board's flawed logic, referring to remedies requiring "losses incurred as a direct or foreseeable result of" the alleged unlawful action as "novel, consequential-damages-like labor law remed[ies]." *See Thryv Inc.*, 102 F.4th at 737. Therefore, because the General Counsel seeks compensatory damages in the underlying administrative proceeding here, the proceeding is unconstitutional.

Moreover, on June 27, 2024, the Supreme Court held in *Jarkesy* that "it is well established that common law claims must be heard by a jury." 144 S. Ct. at 2127. "Once such a suit 'is brought within the bounds of federal jurisdiction,' an Article III court must decide it, with a jury if the Seventh Amendment applies." *Id.* at 2131 (quoting *Stern*, 564 U.S. at 484). In the Second Complaint, the General Counsel seeks consequential damages against Saint Vincent in the form of: (1) compensation for "all affected employees for any direct or foreseeable pecuniary harms incurred as a result of [Saint Vincent's alleged] denial of the majority of grievances on procedural grounds" and costs incurred for same; (2) compensation to the Union for "any costs it incurred as a result of [Saint Vincent's alleged] failure to continue in effect all the terms and conditions of the parties' collective bargaining agreement by refusing to allow the Labor Relations Connection (LRC) and the American Arbitration Association (AAA) to administer arbitrations after the selection of arbitrators"; and (3) compensation for "affected employees for any direct or

foreseeable pecuniary harms incurred as a result of [Saint Vincent's alleged] changes to [the] shift bonus incentive program, [the] winter market incentive bonus program, and [the] switch shift incentive program."  Second Complaint at p. 8–9. The General Counsel therefore continues to pursue impermissible and unconstitutional consequential damages against Saint Vincent.

### iii. NLRB Members' Wielding of Executive, Judicial, and Legislative Functions Violates the Separation of Powers and Due Process.

The NLRB is an executive agency responsible for making factual determinations in administrative proceedings. This executive power does not extend to adjudication of private rights. Nevertheless, the Board has taken it upon itself to adjudicate private rights.  This is an unconstitutional usurpation of the judiciary's power.

The judicial power, of course, belongs to Article III courts and cannot be shared with the legislature or executive. *See Stern*, 564 U.S. at 482–83. "Under 'the basic concept of separation of powers . . . that flow[s] from the scheme of a tripartite government' adopted in the Constitution, 'the judicial Power of the United States . . . can no more be shared' with another branch than 'the Chief Executive, for example, can share with the Judiciary the veto power.'" *Id.* at 483 (alterations in original) (quoting *United States v. Nixon*, 418 U.S. 683, 704 (1974)).  However, "[t]he National Labor Relations Board, uniquely among major federal administrative agencies, has chosen to promulgate virtually all the legal rules in its field through adjudication rather than rulemaking." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998); *see also Circus Circus Casinos, Inc. v. NLRB*, 961 F.3d 469, 475 (D.C. Cir. 2020).

Against this backdrop, in *Thryv, Inc.*, the Board—an executive agency—explicitly determined it would adjudicate private rights—a judicial function. Section 10(c) of the Act only authorizes the Board to issue an "order requiring [the] person to cease and desist from such unfair labor practice, and to take . . . affirmative action including reinstatement of employees with or

20

without back pay." 29 U.S.C. § 160(c). The Board in *Thryv, Inc.* determined consequential remedies may be awarded without a jury trial. *See* 372 NLRB No. 22, at *13–14. The Board therefore fostered an "unconstitutional delegation." *See Nat'l Fed. of Indep. Bus. v. OSHA*, 595 U.S. 109, 126 (2022) (Gorsuch, J., concurring). The Board unabashedly engaged in quasi-legislative conduct when it articulated a new and expansive interpretation of Section 10(c) of the Act.

As Justice Thomas reasoned in *Axon Enterprise, Inc.*, "[i]t may violate the separation of powers by placing adjudicatory authority over core private rights—a judicial rather than executive power—within the authority of Article II agencies." 598 U.S. at 202 (Thomas, J., concurring) (citing *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 171 (2015) (Thomas, J., dissenting)).

What is more, the Board in *Thryv, Inc.* also expressly permitted "foreseeable" pecuniary harms.  In the Second Complaint against Saint Vincent, the General Counsel seeks "foreseeable" damages against Saint Vincent. As Board Members Kaplan and Ring stated in their dissent in part in *Thryv, Inc.*:

> On its face, this standard would permit recovery for any losses indirectly caused by an unfair labor practice, regardless of how long the chain of causation may stretch from unfair labor practice to loss, whenever the loss is found to be foreseeable. In our view, this standard opens the door to awards of speculative damages that go beyond the Board's remedial authority.

372 NLRB No. 22 at *25 (Members Ring and Kaplan, dissenting). Members Ring and Kaplan correctly pointed out that the Board faces Seventh Amendment issues if it strays into areas more akin to tort remedies. Those concerns also militate against the majority's 'direct or foreseeable' standard." *Id.*

The Board's finding that foreseeable damages constitute equitable relief under Section 10(c) is not only incorrect, but a direct abuse of its executive power.  The Act does not authorize the NLRB to put an aggrieved party in a better position than it would have been had the Act not been violated; a position created by "foreseeable" pecuniary damages. The Board's intentional disregard of the separation of powers violates Saint Vincent's due process right to a fair hearing.

  **b.  There Is No Disputed Fact that Saint Vincent Will Suffer Irreparable Harm Without a Preliminary Injunction.**

Saint Vincent will suffer immediate and irreparable harm absent injunctive relief. An irreparable harm, for purposes of preliminary injunctive relief, "is an imminent injury that is both great and certain to occur, and for which legal remedies are inadequate." *Beattie v. Barnhart,* 663 F. Supp. 2d 5, 9 (D.D.C. 2009). "'[T]he loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Archdiocese of Washington v. Washington Metro. Area Transit Auth.,* 897 F.3d 314, 334 (D.C. Cir 2018), *cert. denied*, 140 S. Ct. 1198 (2020) (quoting *Mills v. Dist. of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009)); *see also BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (alteration in original) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)) ("[T]he loss of constitutional freedoms 'for even minimal periods of time . . . unquestionably constitutes irreparable injury.'"); *John Doe Co. v. Consumer Fin. Protect. Bureau*, 849 F.3d 1129, 1136 (D.C. Cir. 2017) (Kavanaugh, J., dissenting) ("Irreparable harm occurs almost by definition when a person or entity demonstrates a likelihood that it is being regulated on an ongoing basis by an unconstitutionally structured agency that has issued binding rules governing the plaintiff's conduct and that has authority to bring enforcement actions against the plaintiff.").

Where a constitutional right is "either threatened or in fact being impaired at the time relief was sought," preliminary injunctive relief is appropriate. *See Elrod*, 427 U.S. at 373–74.  Here, it

is undisputed that Saint Vincent's constitutional rights are being threatened and impaired at the time of filing of the instant Motion, which is sufficient to establish the existence of irreparable harm. *See Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) (internal quotation marks and citation omitted) (alteration in original) ("[S]uits for declaratory and injunctive relief against the threatened invasion of a constitutional right do not ordinarily require proof of any injury other than the threatened constitutional deprivation itself. Thus, [a]lthough a plaintiff seeking equitable relief must show a threat of substantial and immediate irreparable injury, a prospective violation of a constitutional right constitutes irreparable injury for these purposes."); *Aunt Bertha*, 2024 WL 4202383, at *3 ("Findhelp's alleged injury is having to participate in a constitutionally defective administrative process that is created by the removal provisions.").

The Supreme Court recognized this in *Axon Enterprise, Inc.*, in which the plaintiffs sought to enjoin Federal Trade Commission ("FTC") and SEC enforcement proceedings by challenging the constitutionality of tenure protection for the FTC's and SEC's ALJs. *See* 598 U.S. at 180. In doing so, the Court recognized the "harm" of "'being subjected' to 'unconstitutional agency authority'—a 'proceeding by an unaccountable ALJ'" is an "abstract" harm, but nonetheless "'a here-and-now injury.'" *Id*. at 191 (citing *Seila Law LLC*, 591 U.S. at 212). This type of claim is a "'here-and-now injury'" because "it is impossible to remedy once the proceeding is over, which is when appellate review kicks in." *Id*. (quoting *Seila Law LLC*, 591 U.S. at 212); *see also Alpine Sec. Corp.*, 2023 WL 4703307, at *2 (Walker, J., concurring) (quoting *Axon Enter., Inc.*, 598 U.S. at 191) ("Alpine would suffer an irreparable harm without an injunction because . . . the resolution of claims by an unconstitutionally structured adjudicator is a 'here-and-now injury' that cannot later be remedied."); *Cochran v. SEC*, 20 F.4th 194, 212–13 (5th Cir. 2021) ("[I]f Cochran's [removal power] claim is meritorious, then withholding judicial consideration would injure her by

forcing her to litigate before an ALJ who is unconstitutionally insulated from presidential control."), *affirmed and remanded sub nom. by Axon*, 598 U.S. 175.  Thus, were the "illegitimate proceeding, led by an illegitimate decisionmaker" permitted to go forward, "structural constitutional claims would come too late to be meaningful." *Axon Enter., Inc.*, 598 U.S. at 191.

Although the Supreme Court in *Axon Enterprise, Inc.* addressed whether federal courts have subject matter jurisdiction to entertain a lawsuit challenging the constitutionality of an agency's structure, the Court also addressed "whether preclusion of district court jurisdiction could foreclose all meaningful judicial review."  *See id.* at 180, 190 (internal quotation marks omitted). In determining that federal courts have jurisdiction to hear these claims, the Court focused on "the interaction between the alleged injury and the timing of review."  *See id.* at 191.  Specifically, the Court noted that the plaintiffs' injury was "a here-and-now injury" that was "impossible to remedy once the proceeding is over" based upon the following reasoning:

> Suppose a court of appeals agrees with Axon, on review of an adverse FTC decision, that ALJ-led proceedings violate the separation of powers.  The court could of course vacate the FTC's order.  But Axon's separation-of-powers claim is not about that order; indeed, Axon would have the same claim had it *won* before the agency.  The claim, again, is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker.  And as to that grievance, the court of appeals can do nothing: A proceeding that has already happened cannot be undone.  Judicial review of Axon's (and Cochran's) structure constitutional claims would come too late to be meaningful.
> . . .
> What makes the difference here is the nature of the claims and accompanying harms that the parties are asserting.  Again, Axon and Cochran protest the here-and-now injury of subjection to an unconstitutionally structured decisionmaking process.  And more, subjection to that process irrespective of its outcome, or of other decisions made within it.  A nearer analogy than any the Government offers is to our established immunity doctrines.  There, we have identified certain rights not to stand trial or face other legal processes.  And we have recognized that those rights are effectively lost if review is deferred until after trial.  So too here, Axon and

24

> Cochran will lose their rights not to undergo the complained-of agency proceedings if they cannot assert those rights until the proceedings are over.

*See id.* at 191, 192 (internal citations and quotation marks omitted).  In finding that the plaintiffs were properly able to raise their constitutional claims in federal court, the Supreme Court essentially reasoned that the plaintiffs would be subjected to irreparable harm if they were not able to proceed with their lawsuits.  While the Supreme Court may not have referred to this harm as irreparable harm, the Court's analysis recognized this very procedural injury as establishing per se irreparable harm.  *Compare id.* at 192 (internal quotation marks omitted) (defining the plaintiffs' harm as a "here-and-now injury" to which the plaintiffs "will lose their rights not to undergo" an unconstitutional proceeding if they cannot raise their claim now), *with Beattie,* 663 F. Supp. 2d at 9 (defining irreparable harm as "an imminent injury that is both great and certain to occur, and for which legal remedies are inadequate").

That is precisely what Saint Vincent faces here.  Should the NLRB proceeding go forward, Saint Vincent will lose its right not to undergo an unconstitutional proceeding, an injury constituting irreparable harm as it is "impossible to remedy once the proceeding is over," and "[j]udicial review of [its] structural constitutional claims would come too late to be meaningful." *See Axon Enter., Inc.*, 598 U.S. at 191.  Further establishing the irreparable harm to Saint Vincent is that the Supreme Court has found a party appearing before an improperly insulated government official often has no automatic right to void the decision after the fact.  *See Collins*, 594 U.S. at 257–260; *see also John Doe Co.*, 849 F.3d at 1133 ("[T]he Supreme Court and this court have often accorded validity to past acts of unconstitutionally structured governmental agencies.").

To the extent that Defendants argue Saint Vincent is required to establish the unconstitutional proceeding it challenges has caused a but-for injury to Saint Vincent, such

argument is inconsistent with *Axon Enterprise, Inc.*, and thus, without merit.  Specifically, *Axon Enterprise, Inc.* has made it clear that simply being subjected to an unconstitutionally structured proceeding constitutes irreparable harm.  *See* 598 U.S. at 191, 192; *see also Alpine Sec. Corp.*, 2023 WL 4703307, at \*2 (Walker, J., concurring) (recognizing that irreparable harm in support of an injunction is established when a party is subject to "claims by an unconstitutionally structured adjudicator").

At the hearing on the Motion for TRO and PI, Defendants argued *Axon Enterprise, Inc.* was not controlling because *John Doe Co.* holds there is no automatic right to a finding of irreparable harm based on a claim asserting a constitutional violation. Defendants' argument misconstrues the holding and the facts in *John Doe Co.*  In fact, *John Doe Co.* supports Saint Vincent's position that it is subjected to irreparable harm by having to defend itself in an unconstitutional proceeding.

In *John Doe Co.*, the Consumer Financial Protection Bureau ("CFPB") issued a request for information through a Civil Investigative Demand ("CID") that was not self-enforcing and did not require the company to do anything in response.  *See* 849 F.3d at 1131.  Rather, if the company declined to respond to the CID, the CFPB must obtain a court order to enforce the CID.  *See id.* After receiving the CID, the company filed a lawsuit and requested a preliminary injunction to enjoin enforcement of the CID.  *See id.*  However, the appellate court noted that the company filed its motion for a preliminary injunction prior to the company needing to take any action in response to the CID, and thus, the company sought injunctive relief "at this pre-enforcement juncture on the basis of nothing other than the issuance of a CID."  *See id.* at 1131, 1133.  Stated differently, "the Company has come to this court to halt an agency action that requires nothing on its part, and certainly does not force it to 'bet the farm.'"  *Id.* at 1134 (quoting *Free Enter. Fund*, 561 U.S. at

490).  Thus, the court in *John Doe Co.* held there is no automatic showing of irreparable harm when the plaintiff can raise its constitutional claim in an enforcement proceeding.  *See id.* at 1135.

Whereas there was no irreparable harm to the company in *John Doe Co.* because the company filed "its preemptive proceeding" with the federal district court in the District of Columbia rather than raising its constitutional claim with the federal district court in California when the CFPB later filed its enforcement action (*see id.* at 1133, 1134), Saint Vincent does not have the ability to wait to raise its constitutional claim before any adverse action is taken against it.  Critically, Saint Vincent's failure to file this instant proceeding would subject it to immediate irreparable harm as it is required to defend itself right now in an unconstitutional Board proceeding, which is a "'here-and-now injury.'"  *See Axon Enterprise, Inc.*, 598 U.S. at 191 (quoting *Seila Law LLC*, 591 U.S. at 212); *contra John Doe Co.*, 849 F.3d at 1135 ("[T]he only consequence of denying an injunction pending appeal in the Company's pre-enforcement suit is that it must raise its separation-of-powers arguments in the pending CID enforcement action in district court."). Unlike the company in *John Doe Co.*, Saint Vincent is coming to this Court to halt the Board's action that requires Saint Vincent to appear at, a minimum, ten-day hearing[4] to defend itself before an unconstitutionally structured governmental agency.  Clearly, the factual circumstances surrounding the level of irreparable harm facing Saint Vincent and the company in *John Doe Co.* are entirely different.

In addition to the constitutional harm inflicted upon Saint Vincent, it also stands to suffer economic harm from the unconstitutional proceedings. Because the Board has unilaterally created a rule requiring Charged Parties in unfair labor practice proceedings to compensate Charging

---

[4] ALJ Merritt has repeatedly referred to scheduling additional days for the hearing beyond the 10 days currently scheduled if needed.

Parties for "direct and foreseeable" consequential damages, Saint Vincent has limited insight into its liability. Most recently, in May of 2024, in connection with its issuance of the Second Complaint in the underlying administrative proceeding, Region 1 demanded an undetermined amount from Saint Vincent. To date, Saint Vincent is not aware of the evidence the Region used to conclude consequential damages are appropriate.  It is foreseeable the calculation will only continue to rise as Saint Vincent moves further into the hearing dates.

This type of economic harm that Saint Vincent is subjected to differs from the typical "economic damages [that] ordinarily do not constitute irreparable harm."  *See Beacon Assocs., Inc. v. Apprio, Inc.*, 308 F. Supp. 3d 277, 289 (D.D.C. 2018).  Specifically, this case goes beyond mere "monetary losses that can be repaid" as Saint Vincent is facing an undisclosed amount of consequential damages to which the Region has proffered no evidence in support of the Union's entitlement to such damages.  *See Global Tropical Imports & Exports LLC v. Bernhardt*, No. 1:18-cv-01341 (TNM), 2019 WL 2775577, at *2 (D.D.C. July 2, 2019), *aff'd,* 798 F. App'x (D.C. Cir. 2020) (citing *Wash. Metro Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 n.2 (D.C. Cir. 1977)).  Thus, the NLRB's attempt to deprive Saint Vincent of its constitutional right to a jury trial also cannot be remedied after the proceedings occur. *See Axon Enter., Inc.*, 598 U.S. at 191.

Accordingly, there is no disputed issue of material fact that Saint Vincent faces irreparable constitutional and economic harm should the hearing move forward.

### c.   There is no Disputed Fact that the Balance of Equities Tips in Favor of Saint Vincent and an Injunction is in the Public Interest.

Saint Vincent satisfies the two remaining preliminary injunction factors as well.  Where "the Government is the opposing party," the "harm to the opposing party and weighing the public interest" factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also Luokung Tech. Corp.*

*v. Dep't of Defense*, 538 F. Supp. 3d 174, 182 (D.D.C. 2021). As noted earlier, should the NLRB proceeding go forward, Saint Vincent will lose its right not to undergo an unconstitutional proceeding, an injury "impossible to remedy once the proceeding is over," and "[j]udicial review of [its] structural constitutional claims would come too late to be meaningful." *See Axon Enter., Inc.*, 598 U.S. at 191; *see also Cortes*, 2024 WL 1555877, at *4 (alteration in original) (quoting *Axon Enter., Inc.*, 598 U.S. at 191) ("To be sure, there are cases in which 'being subjected' to 'unconstitutional agency authority'—a 'proceeding by an unaccountable [agency]'—may suffice to establish standing even absent a specific agency action that caused injury.").  Further, because the General Counsel also seeks consequential damages, "direct or foreseeable," Saint Vincent will be deprived of its right to a trial of a jury of its peers.

Defendants, on the other hand, would not be harmed if this injunction is granted. A preliminary injunction is improper if the injunction would substantially injure other interested parties. *See Arkansas Dairy Coop. Ass'n v. U.S. Dep't of Agric.*, 573 F.3d 815, 821 (D.C. Cir. 2009), *cert. denied*, 558 U.S. 1113 (2010). Here, similar to the effect, or lack thereof, of a preliminary injunction on OSHA in the *BST Holdings, L.L.C.* case, a preliminary injunction will do the NLRB "no harm whatsoever." *See* 17 F.4th at 618. "Any interest [an administrative agency] may claim in enforcing an unlawful (and likely unconstitutional)" proceeding is "illegitimate." *See id*.

The public-interest factor weighs in favor of Saint Vincent as there is "no public interest in the perpetuation of unlawful agency action.  To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations."  *See League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (internal quotation marks and citations omitted); *see also Alpine Sec. Corp.*, 2023 WL 4703307, at *2 (Walker, J., concurring) (internal citation omitted) ("The public interest favors preventing the

29

deprivation of individual rights and abuses of government power. . . .  The interests cutting the other way are not as strong.  The public has an interest in timely enforcement against those who violate the law. But here the only evidence that Alpine *has* violated the law is FINRA's say so.  And if Alpine is correct on the merits, then FINRA is an illegitimate decisionmaker."); *John Doe Co.*, 849 F.3d at 1137 (Kavanaugh, J., dissenting) ("The public interest is not served by letting an unconstitutionally structured agency continue to operate until the constitutional flaw is fixed.  And in this circumstance, the equities favor the people whose liberties are being infringed, not the unconstitutionally structured agency."); *Lamprecht v. FCC*, 958 F.2d 382, 390 (D.C. Cir. 1992) ("[A] Commission policy that is unconstitutional would inherently conflict with the public interest.").  And it is not in the public's interest for the Executive Branch to "slip from the Executive's control, and thus from that of the people." *Free Enter. Fund*, 561 U.S. at 499.

Even if the Court grants this preliminary injunction, but determines the NLRB's proceedings are constitutional, Defendants could move forward with the administrative hearing at that time.  The reality is that Region 1 waited over two years to issue a Complaint in connection with the first unfair labor practice charge filed in the underlying proceeding.  This preliminary injunction would merely require the NLRB to stay the unfair labor practice proceedings while this Court makes its determination. While Saint Vincent will suffer constitutional deprivation and economic losses without the preliminary injunction, Defendants simply do not stand to lose anything with the issuance of the injunction.

## IV.   CONCLUSION

As recognized by the Supreme Court,

> [t]he Constitution that makes the President accountable to the people
> for executing the laws also gives him the power to do so. That power
> includes, as a general matter, the authority to remove those who
> assist him in carrying out his duties. Without such power, the

> President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else. Such diffusion of authority would greatly diminish the intended and necessary responsibility of the chief magistrate himself.
>
> While we have sustained in certain cases limits on the President's removal power, the Act before us imposes a new type of restriction—two levels of protection from removal for those who nonetheless exercise significant executive power. Congress cannot limit the President's authority in this way.

*Free Enter. Fund*, 561 U.S. at 513–14 (internal quotation marks and citation omitted).  No material issue of fact exists to dispute that Saint Vincent has been and will continue to be subjected to administrative proceedings before an administrative agency whose structure does not comply with this constitutional mandate coming directly from the Supreme Court.  For the foregoing reasons, Saint Vincent has established that it is entitled to judgment as a matter of law on its request for a preliminary injunction.  Thus, Saint Vincent respectfully requests the Court to grant this Motion and enter a preliminary injunction against the NLRB's ongoing administrative proceeding against Saint Vincent, which has already begun and is scheduled to reconvene on September 24, 2024.

Dated: September 20, 2024                    Respectfully submitted,

                                             FORD & HARRISON LLP

                                             By:    *s/ Jacquelyn L. Thompson*

                                             JACQUELYN L. THOMPSON
                                             DC Bar No. 988663
                                             FORD & HARRISON LLP
                                             2000 M Street NW, Suite 505
                                             Washington, DC 20036
                                             Telephone: (202) 719-2000

                                             *Attorney for Saint Vincent*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 20, 2024 a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF, which will send a notice of electronic filing to all counsel of record.

<u>*s/ Jacquelyn L. Thompson*</u>
Attorney for Saint Vincent

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

VHS ACQUISITION SUBSIDIARY
NUMBER 7, INC. d/b/a SAINT VINCENT
HOSPITAL

     **Plaintiff,**

v.

NATIONAL LABOR RELATIONS
BOARD, a federal administrative agency,
JENNIFER ABRUZZO, in her official
capacity as the General Counsel of the
National Labor Relations Board, LAUREN
M. McFERRAN, in her official capacity as
the Chairman of the National Labor
Relations Board, MARVIN E. KAPLAN,
GWYNNE A. WILCOX, and DAVID M.
PROUTY, in their official capacities as
Board Members of the National Labor
Relations Board, and SUSANNAH
MERRITT in her official capacity as an
Administrative Law Judge of the National
Labor Relations Board,

     **Defendants.**

Case No. 1:24-cv-02577-TNM

---

**PLAINTIFF VHS ACQUISITION SUBSIDIARY NUMBER 7, d/b/a SAINT VINCENT HOSPITAL'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO ITS REQUEST FOR A <u>PRELIMINARY INJUNCTION</u>**

Plaintiff VHS Acquisition Subsidiary Number 7, Inc. d/b/a Saint Vincent Hospital ("Saint Vincent"), pursuant to Local Rule 7(h)(1), hereby files its statement of material facts to which it contends there is no genuine issue.

1.     Saint Vincent is an acute-care hospital located in Worcester, MA.  Doc. 3-1 at ¶ 2.

2.     Nurses at Saint Vincent are represented by a union, the Massachusetts Nurses Association ("MNA" or "Union").  *Id.* at ¶ 3.

1

3.      The underlying administrative proceeding arises out of unfair labor practice charges filed by MNA against Saint Vincent, all of which are the subject of a hearing before a National Labor Relations Board ("NLRB") Administrative Law Judge ("ALJ") that began on September 9, 2024, continued on September 12 and 13, 2024, and is scheduled to continue thereafter on September 23, 25, 26, and 27, 2024 and October 21, 22, and 23, 2024.  *Id.* at ¶¶ 4, 12.

4.      On March 13, 2024, ***over two years*** after MNA filed its first unfair labor practice charge, the Regional Director for Region 1 of the NLRB issued the Consolidated Complaint and Notice of Hearing (the "First Complaint").  *Id.* at ¶ 5.

5.      The First Complaint also provided notice that "a hearing will be conducted before an administrative law judge of the National Labor Relations Board" on June 18, 2024.  *Id.*

6.      Saint Vincent timely filed its answer and defenses on March 27, 2024.  *Id.*

7.      On May 13, 2024, the NLRB's Division of Judges assigned ALJ Lisa Friedheim-Weis to the case.  *Id.* at ¶ 6.

8.      On May 23, 2024, the Regional Director for Region 1 issued the Second Consolidated Complaint and Notice of Hearing (the "Second Complaint").  *Id.* at ¶ 7.

9.      The Second Complaint alleges that Saint Vincent violated Sections 8(a)(1), (3), (4), and (5) of the National Labor Relations Act by: denying Union representatives access to Saint Vincent and unilaterally changing its policy regarding Union access to Saint Vincent; unilaterally implementing bonus programs and failing to make bonus payments to employees; failing to furnish the Union with information requested by the Union; denying the majority of grievances filed by the Union on procedural grounds; designating its Labor Relations Director as the Hospital's sole designee for all steps of the contractual grievance procedure; and refusing to allow two separate

third parties to administer arbitrations filed by MNA against Saint Vincent. *See generally id.* at pp. 6–18.

10.     In the Second Complaint, the Regional Director for Region 1 seeks the following economic relief in the Wherefore Clause: (1) compensation for "all affected employees for any direct or foreseeable pecuniary harms incurred as a result of [Saint Vincent's alleged] denial of the majority of grievances on procedural grounds" and costs incurred for same; (2) compensation to the Union for "any costs it incurred as a result of [Saint Vincent's alleged] failure to continue in effect all the terms and conditions of the parties' collective bargaining agreement by refusing to allow the Labor Relations Connection (LRC) and the American Arbitration Association (AAA) to administer arbitrations after the selection of arbitrators"; and (3) compensation for "affected employees for any direct or foreseeable pecuniary harms incurred as a result of [Saint Vincent's alleged] changes to [the] shift bonus incentive program, [the] winter market incentive bonus program, and [the] switch shift incentive program." *Id.* at ¶ 8.

11.     Saint Vincent timely filed its answer and defenses to the Second Complaint on June 6, 2024. *Id.* at ¶ 9.

12.     On June 14, 2024, Saint Vincent filed a motion to postpone the hearing, due to the unavailability of a subpoenaed witness. *Id.* at ¶ 10.

13.     By order dated June 16, 2024, ALJ Friedheim-Weis postponed the hearing and by order dated June 18, 2024, she rescheduled the hearing to open on September 9, 2024. *Id.*

14.     On August 5, 2024, ALJ Friedheim-Weis notified the parties that a new ALJ would be assigned. *Id.* at ¶ 11.

15.     The NLRB's Division of Judges assigned ALJ Susannah Merritt to the case on August 13, 2024. *Id.*

16.     On August 21, 2024, ALJ Merritt issued another scheduling order, providing:

> the hearing in the above referenced case will open via Zoom videoconference at 9:00 a.m. eastern time on Monday, September 9, 2024, but only for my opening statement, notices of appearance of counsel for the record, and the production of subpoenaed documents. The hearing will reconvene at 9:00 a.m. eastern time at the Thomas P. O'Neill Jr. Federal Building, 10 Causeway Street, Suite 1002, Boston, Massachusetts, on Thursday, September 12, through Friday, September 13, 2024.  The hearing will continue at the same location in Boston, Massachusetts, on Monday, September 23, through Friday, September 27 (excluding Tuesday, September 24, 2024) and again on Monday, October 21, through Wednesday, October 23, 2024.

*Id*. at ¶ 12.

17.     On September 9, 2024, Saint Vincent filed its Complaint for Declaratory and Injunctive Relief (Doc. 1 ("Complaint")) and its Motion for a Temporary Restraining Order and Preliminary Injunction and Memorandum in Support (Doc. 3 ("Motion for TRO and PI")) with this Court.

18.     On September 10, 2024, the Court issued an Order scheduling an in-person hearing for the same day on the Motion for TRO and PI.  Doc. Minute Order, September 10, 2024.

19.     On the same day after the hearing occurred, the Court denied Saint Vincent's request for a temporary restraining order but ordered Saint Vincent to file a motion for summary judgment as to its request for a preliminary injunction no later than September 20, 2024.  Doc. Minute Entry, September 10, 2024.

20.     On September 20, 2024, Saint Vincent filed its Notice of Voluntary Dismissal without Prejudice of Count II in the Complaint in which Saint Vincent voluntarily dismissed its claim that the NLRB's Board members are unconstitutionally insulated from removal.  *See* Doc. 11 ("Notice of Dismissal").

21.     Following the Notice of Dismissal, there are only three constitutional claims raised by Saint Vincent that are now part of the Complaint to which Saint Vincent is requesting a preliminary injunction: (1) Count I – the NLRB's ALJs are unconstitutionally insulated from the President's removal powers; (2) Count III – the NLRB's ALJs adjudicate private rights without a jury trial in violation of the Seventh Amendment to the United States Constitution; and (3) Count IV – the NLRB's wielding of executive, legislative, and judicial authority and power violates the Fifth Amendment to the United States Constitution.  *See* Docs. 1, 3, 11.


Dated: September 20, 2024                  Respectfully submitted,


                                           FORD & HARRISON LLP

                                           By: *s/ Jacquelyn L. Thompson*

                                           JACQUELYN L. THOMPSON
                                           DC Bar No. 988663
                                           FORD & HARRISON LLP
                                           2000 M Street NW, Suite 505
                                           Washington, DC 20036
                                           Telephone: (202) 719-2000

                                           *Attorney for Saint Vincent*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on September 20, 2024 a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF, which will send a notice of electronic filing to all counsel of record.

<u>*s/ Jacquelyn L. Thompson*</u>

Attorney for Saint Vincent