**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

VHS ACQUISITION SUBSIDIARY
NUMBER 7, INC. d/b/a SAINT VINCENT
HOSPITAL,

        *Plaintiff,*

        v.

NATIONAL LABOR RELATIONS BOARD,
*et al.,*

        *Defendants.*

Case No. 1:24-cv-02577-TNM

---

**DEFENDANTS' REPLY IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY
JUDGMENT AND MOTION TO DISMISS**

## INTRODUCTION

Defendants National Labor Relations Board, *et al.* (collectively, the NLRB) submit this Reply in support of their Cross-Motion for Summary Judgment and Motion to Dismiss for Lack of Subject-Matter Jurisdiction [ECF 16], to which Plaintiff VHS Acquisition Subsidiary Number 7, Inc. d/b/a Saint Vincent Hospital (Saint Vincent) filed its Opposition [ECF 21]. For the reasons set forth below, the Court should grant the NLRB's motions.

## ARGUMENT

### I.   The NLRB seeks summary judgment on the entirety of Saint Vincent's Complaint, even if Saint Vincent does not.

As a preliminary matter, Saint Vincent argues that "the Court intended for the parties to brief summary judgment on [its] request for a preliminary injunction and *not* for a final ruling disposing of this entire case." [ECF 21, p. 3 (emphasis added); *see also id.* at 2–4.] As explained earlier, there is no such concept in federal litigation as summary judgment on a preliminary injunction. [*See* ECF 16, p. 1 n.2.] Moreover, Saint Vincent ignores this Court's own words, which repeatedly negate this presumed intent. [*See* Ex. A, p. 24 (parties agreeing to the Court's suggestion to "consolidate the preliminary injunction briefing with motion for an *injunction on the merits*" rather than "going through three rounds of briefing") (emphasis added); *id.* at 24–25 (plaintiff would be entitled to injunctive relief before October 21, 2024, "if I find for you on the merits"); *id.* at 27 ("I'd try to give the parties a ruling . . . that would address the merits . . . . I am proposing and expect to combine the motion for preliminary injunction with trial on the merits as it were in this summary judgment briefing."); *see also* Minute Order, ECF 6 (denying Saint Vincent's Motion for a Temporary Restraining Order and ordering summary judgment briefing).] In any event, it is now clear that Saint Vincent does not presently seek summary judgment on the merits of its Complaint. But the NLRB does, and it is entitled to judgment as a matter of law.

II.     **None of Saint Vincent's arguments regarding NLRB ALJ removal protections are persuasive (Count I).**

A.     *NLRB ALJ removal protections are constitutional.*

Although Saint Vincent begins its Opposition with the argument that "multilayer removal protections" for administrative law judges (ALJs) "are unconstitutional" [ECF 21, p. 6], it soon transitions to a strikingly broad argument that would invalidate *any* removal protections for ALJs. [*Id.*, pp. 7–8]. Saint Vincent is wrong on both counts.

First, Saint Vincent argues that *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010), stands for the proposition that two or more layers of for-cause removal protection for inferior officers are per se unconstitutional. [ECF 21, p. 9.][1] But as the Ninth Circuit correctly explained in *Decker Coal Co. v. Pehringer*, "the Court [in *Free Enterprise Fund*] did *not* broadly declare all two-level for-cause protections for inferior officers unconstitutional." 8 F.4th 1123, 1132 (9th Cir. 2021) (emphasis added); *accord Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 764 (10th Cir. 2024) (following *Decker Coal*'s "persuasive" analysis), *petition for cert. filed*, No. 24-156 (Aug. 9, 2024). Rather, as the *Decker Coal* court further explained, *Free Enterprise Fund* addressed a "highly unusual" removal statute that codified "unusually high" removal standards, thereby severely restricting the President's power to control members of the Public Company Accounting Oversight Board (PCAOB). 8 F.4th at 1132 (quoting *Free Enterprise Fund*, 561 U.S. at 505, 502–03). Indeed, the

---

[1] Saint Vincent continues to treat any involvement of the Merit Systems Protection Board (MSPB) in removal actions as adding an additional "layer" of removal protections. Not only is this wrong, [*see* ECF 16, p.14 n.6.], it is irrelevant. As the Sixth Circuit has observed, the validity of ALJs' removal protections does not depend "on how many levels of removal protections they enjoy." *Calcutt v. FDIC*, 37 F.4th 293, 320 (6th Cir. 2022), *rev'd per curiam on other grounds*, 598 U.S. 623 (2023). Saint Vincent goes even further astray by suggesting that MSPB members "remove ALJs." [ECF 21, p. 6.] To the contrary, such actions are taken "by the agency in which the administrative law judge is employed." 5 U.S.C. § 7521(a); *see, e.g.*, *Dep't of Health & Hum. Servs. v. Jarboe*, 2023 MSPB 22, ¶ 14 (2023) ("The [MSPB] itself does not have the authority to remove the respondent [ALJ]. Moreover, our determination that good cause exists to remove the respondent does not bind the agency to remove the respondent, but merely authorizes it do so.") (citation omitted).

Supreme Court emphasized how the PCAOB's removal scheme departed from "an 'ordinary' dual for-cause standard." 561 U.S. at 502; *see also id.* at 507 n.10 ("The Government below refused to identify . . . administrative law judges as 'precedent for the PCAOB.'") (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 537 F.3d 667, 699 n.8 (D.C. Cir. 2008) (Kavanaugh, J., dissenting)). And *Free Enterprise Fund* involved officers who exercised "enforcement or policymaking functions," *id.* at 507 n.10, over "a vital sector of our economy," *id.* at 508. By contrast, NLRB ALJs are removable for "good cause"—a commonplace standard—and they do not have the authority to initiate enforcement actions or decide Agency policy.

Saint Vincent next makes much of the fact that the Supreme Court's decision in *Seila Law LLC v. CFPB* includes an overview of the Court's removal precedents, in which it describes the Court as having upheld removal protections "for inferior officers with limited duties and no policymaking or administrative authority." 591 U.S. 197, 218 (2020); [*see* ECF 21, p. 7]. But that same summary describes *Morrison v. Olson*, 487 U.S. 654 (1988)—the independent-counsel case—as having determined that the "ultimate question" was whether the challenged removal restriction was "of such a nature that it impedes the President's ability to perform his constitutional duty." *Id.* at 217 (cleaned up).[2] As the NLRB has argued [ECF 16, pp. 12–14], and as the Sixth, Ninth, and Tenth Circuits have found, the removal restrictions applicable to ALJs who perform purely adjudicatory functions do not run afoul this constitutional requirement. *See Calcutt*, 37 F.4th at 319 (doubting claim that Federal Deposit Insurance Corporation ALJs' removal protections are unconstitutional, as "many ALJs 'perform adjudicative rather than enforcement or policymaking functions'") (quoting

---

[2] The Supreme Court in *Seila Law* was explicit that its decision did "not revisit our prior decisions allowing certain limitations on the President's removal power," including *Morrison*. 591 U.S. at 204. *See Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 355 (5th Cir. 2024) (rejecting argument that "gives too much weight to the words" in *Seila Law*'s overview), *petition for cert. filed*, No. 23-1323 (U.S. June 14, 2024); *Leachco*, 103 F.4th at 762–63; *Meta Platforms, Inc. v. FTC*, No. 23-3562 (RDM), 2024 WL 1121424, at *14 (D.D.C. Mar. 15, 2024) (describing the overview as "dicta").

*Free Enterprise Fund*, 561 U.S. at 507 n.10); *Decker Coal*, 8 F.4th at 1133 (holding removal protections for Department of Labor ALJs constitutional because, among other reasons, those ALJs perform "a purely adjudicatory function"); *Leachco*, 103 F.4th at 764 (explaining that *Free Enterprise Fund*'s rationale did not apply because Consumer Product Safety Commission ALJs "performed 'a purely adjudicatory function'").[3]

Saint Vincent then makes matters worse by distorting the overview from *Seila Law* to suit its needs. Specifically, Saint Vincent suggests that *Seila Law* precludes Congress from granting removal protections to inferior officers who "exercise significant administrative, *executive*, and policymaking power." [ECF 21, p. 7 (emphasis added).] But *Seila Law* does not say this about "executive" power. Nor does Saint Vincent's gloss on *Seila Law* make sense because "there [wa]s no real dispute that the functions performed by the independent counsel [we]re 'executive'" in *Morrison*, yet the Court upheld the removal restrictions at issue in that case. 487 U.S. at 691.[4] So, it is hardly a winning

---

[3] These circuit-level decisions also refute Saint Vincent's puzzling claim that there is no "recognized" distinction between adjudicatory and non-adjudicatory inferior officers. [ECF 21, p. 8.] Further undermining this claim are several on-point district court decisions. *See, e.g.*, *Alivio Med. Ctr. v. Abruzzo*, No. 24-CV-7217, 2024 WL 4188068, at *11 (N.D. Ill. Sept. 13, 2024) (denying motion for preliminary injunction of NLRB proceedings in part based on finding that "ALJ exercises [of] authority [are] comparable to that of a federal district judge conducting a bench trial," and without additional showing that ALJs exercised some "significant executive power," their removal protections are not likely to be found unconstitutional) (second quote from *Free Enter. Fund*, 561 U.S. at 514); *YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24-12173, 2024 WL 4119058, at *8 (E.D. Mich. Sept. 9, 2024) ("NLRB ALJs perform purely adjudicatory functions, issue non-final recommendations to the NLRB, and enjoy good-cause protections that are a 'lesser impingement' than the removal standard at issue in *Free Enterprise Fund*."), *injunction pending appeal denied*, No. 24-1754, 2024 WL 4489598 (6th Cir. Oct. 13, 2024), *emergency application for writ of injunction denied*, No. 24A348 (U.S. Oct. 15, 2024) (Kavanaugh, J., in chambers); *H&R Block Inc. v. Himes*, No. 24-00198-CV-WBP, 2024 WL 3742310, at *1–6 (W.D. Mo. Aug. 1, 2024) (denying motion for preliminary injunction because plaintiffs were unlikely to succeed on their constitutional challenge to Federal Trade Commission ALJs' removal protections), *injunction pending appeal denied*, No. 24-2626 (8th Cir. Sept. 13, 2024), *and reconsideration en banc denied*, No. 24-2626 (8th Cir. Oct. 15, 2024).

[4] The independent counsel's authority was undoubtedly significant. She had "full power and independent authority to exercise all investigative and prosecutorial functions and powers of the Department of Justice," could conduct "grand jury proceedings and other investigations," "initiat[e]

argument for Saint Vincent to point out that ALJs, as inferior officers within the Executive Branch, necessarily exercise executive authority. [ECF 21, p. 8.][5]

Tellingly, Saint Vincent never fully embraces the logic of its argument. According to Saint Vincent, NLRB ALJs do not satisfy a "recognized exception[] to the President's removal power" because they:

- interpret the law;
- rule on motions;
- examine witnesses;
- receive, admit, or exclude evidence;
- apply the Federal Rules of Evidence;
- hear oral arguments;
- administer oaths;
- revoke subpoenas;
- remove counsel or parties for disrupting hearings;
- control the length of the hearing;
- take judicial notice; and
- receive offers of proof.

[ECF 21, p. 7.] Of course, ALJs across the government exercise such powers, so Saint Vincent's unspoken but inescapable position is that few if any ALJs could be protected from removal, even if only a single level of removal protection exists. But Saint Vincent's position is impossible to square

---

and conduct[] prosecutions in any court of competent jurisdiction," and appeal adverse decisions. *Morrison*, 487 U.S. at 662 (quotation marks omitted). And when the independent counsel handled any matter, "the Attorney General and the Justice Department [we]re required to suspend all investigations and proceedings regarding the matter." *Id.* at 662–63.

[5] Saint Vincent conflates ALJ and Board decisions when it implies that NLRB ALJs must engage in "policymaking," [ECF 21, p. 8], because the NLRB often implements policy through adjudication. Put simply, NLRB ALJs follow Board policy; they do not set it. *See, e.g., Univ. Med. Ctr.*, 335 NLRB 1318, 1342 (2001)(ALJs "lack authority to overrule a decision of the Board" and are "bound by its decisions") (citing *Iowa Beef Packers, Inc.*, 144 NLRB 615, 616-617 (1963)), *enforced in relevant part*, 335 F.3d 1079 (D.C. Cir. 2003). At all times, responsibility for setting policy resides with the Board. If an ALJs decision is not reviewed by the Board (e.g., in the absence of exceptions filed by a party), that decision is not precedential in future cases. *See, e.g., Permanente Med. Grp., Inc.*, 372 NLRB No. 51, slip op. at 8 (2023) (ALJ decision "adopted pro-forma by the Board without any party filing exceptions" therefore "lack[s] precedential legal authority"), *enforced*, No. 23-519, 2024 WL 1636732 (9th Cir. 2024).

with the Supreme Court's recent decision in *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021), which *restored* the removal protections of comparable administrative adjudicators—there, administrative patent judges. *See id.* at 25–26 (plurality opinion).

### B.    *Saint Vincent has failed to establish, as it must, that the ALJ removal protections at issue caused it harm.*

Saint Vincent presumes that the existence of allegedly unconstitutional removal restrictions for NLRB ALJs means that the hearings conducted by those ALJs are themselves necessarily unconstitutional. [*See* ECF 21, p. 10 n.6.] That argument may have some salience when dealing with an improperly *appointed* official who never had the authority to exercise executive power in the first place. But it is misplaced when dealing with allegedly unconstitutional removal protections that have no discernible effect on the agency action the challenger attacks. *Collins v. Yellen*, 594 U.S. 220 (2021), provides this counterpoint, and that's why *Collins* and cases applying it require a showing of causal harm. Otherwise, the challenger would be eligible for relief that bears no relationship to any asserted injury, as is the case here, where Saint Vincent seeks to enjoin the proceedings of an ALJ that it has no reason to hold out as being objectionable, let alone objectionable in a manner that would incline the President to remove her if he could.

Indeed, Saint Vincent appears to concede that it cannot meet the causal-harm standard established by *Collins* and instead attempts to distinguish that case. [ECF 21, pp. 10–12.][6] First, Saint Vincent argues that *Collins* does not apply because it "is not seeking retrospective relief." [ECF 21 p. 11.] As the NLRB has already explained [*see* ECF 16, p. 18], various courts have rejected this

---

[6] After the NLRB submitted its opposition and cross-motion in this case, a unanimous Sixth Circuit motions panel issued a fully reasoned order confirming that the failure to show causal harm as to NLRB ALJs' removal protections is fatal to a request for injunctive relief. *See YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24-1754, 2024 WL 4489598 (6th Cir. Oct. 13, 2024). Justice Kavanaugh then denied that same challenger's application for writ of injunction. *See YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24A348 (U.S. Oct. 15, 2024), https://www.supremecourt.gov/docket/docketfiles/ html/public/24a348.html (last visited Oct. 16, 2024).

precise argument. *See Calcutt*, 37 F.4th 293 at 316 ("*Collins* inquiry" the same, regardless "whether the petitioner seeks retrospective or prospective relief"); *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 631 (5th Cir. 2022) ("*CFSA*") ("*Collins* did not rest on a distinction between prospective and retrospective relief."); *CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023) ("declin[ing] to read *Collins* so narrowly" to not cover prospective relief), *cert. denied,* 144 S. Ct. 2579 (2024); *Leachco*, 103 F.4th at 757 ("[W]e . . . agree with the Second, Fifth, and Sixth Circuits that *Collins*' relief analysis applies to both retrospective and prospective relief.").

Second and relatedly, Saint Vincent relies on footnote 16 in *Cochran v. SEC*, 20 F.4th 194 (5th Cir. 2021) (en banc), *aff'd and remanded sub nom. Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023), to argue that *Collins* is limited to efforts by challengers to void an administrative action that has already occurred. [ECF 21, p. 12.] But *Cochran*, like *Axon*—its companion case before the Supreme Court— was a case about jurisdiction, not entitlement to relief. The Fifth Circuit noted as much when it said that the "case presents only the issue of whether the Exchange Act divested district court jurisdiction over claims that SEC ALJs are unconstitutionally insulated from the President's removal power; *our holding extends no further.*" *Id.* at 211 (emphasis added); *see also FTC v. U.S. Anesthesia Partners, Inc.*, No. 24-20270, slip op. at 7 (5th Cir. Aug. 15, 2024) (unpublished order dismissing appeal) ("*Axon* is a case about the original jurisdiction of federal courts under 28 U.S.C. § 1331 . . . .").

In any event, footnote 16 of *Cochran* cannot bear the weight that Saint Vincent places upon it. There, the en banc Fifth Circuit majority responded to the dissent, which asserted that improper appointment of an ALJ creates a "more serious injury" than improper restrictions on removal of an ALJ. *Id.* at 210 n.16 (responding to Dissenting Op., *id.* at 243–44). The dissent relied on the *Collins* holding that improper protection from removal, unlike improper appointment, does not lead to the exercise of power that an agency official does not lawfully possess. The *Cochran* majority responded

as follows: "*Collins* does not impact our conclusion in this case because Cochran does not seek to 'void' the acts of any SEC official. Rather, she seeks an administrative adjudication untainted by separation-of-powers violations. Although we will not engage in the dissenting opinion's efforts to weigh the relative severity of constitutional injuries, Cochran's injury is sufficiently serious to justify pre-enforcement review in federal court." *Id.* Conspicuously absent from footnote 16 is any mention of retrospective or prospective relief or whether *Collins* permits plaintiffs to obtain prospective relief without first showing causal harm. Indeed, just ten months later, the Fifth Circuit—with a panel of three circuit judges who had joined in the *Cochran* en banc majority—issued *CFSA*, which held that there is no distinction between retrospective and prospective relief under *Collins*. *See* 51 F.4th at 631. Accordingly, Saint Vincent's comparison of its case with *Cochran* is misplaced and does not advance its motion for summary judgment.

III.    **Saint Vincent's arguments regarding its claimed right to a jury trial under the Seventh Amendment are similarly unpersuasive (Count III).**

    A.    *This Court lacks subject-matter jurisdiction over Saint Vincent's Seventh Amendment claim.*

Contrary to Saint Vincent's assertion [ECF 21, p. 13], the unavailability of a jury trial in the underlying unfair-labor-practice proceeding is not a "here-and-now" injury under *Axon* that would escape meaningful judicial review via normal statutory exhaustion. Like the unsuccessful Seventh Amendment challenger in *Blankenship v. FINRA*, No. 24-cv-03003, 2024 WL 4043442 (E.D. Pa. Sept. 4, 2024), *appeal docketed*, No. 24-2860 (3d Cir. Oct. 4, 2024), who sought a jury trial to avoid being subjected to an administrative disciplinary hearing that may have imposed "fines beyond those that would restore the status quo," *id.* at *1, Saint Vincent's purported injuries "do not arise merely from [its] appearance in [the NLRB's] proceedings," *id.* at *2. Rather, the NLRB would "have to take certain allegedly unconstitutional steps to injure" Saint Vincent. *Id.* And even if the NLRB took those steps by ordering the complained-about relief—and thereby subjected Saint Vincent to

remedies that implicate the Seventh Amendment—Saint Vincent would not have to pay any money whatsoever unless and until a court of appeals enforced the Board's order over Saint Vincent's objections because, as the NLRB has explained [ECF 16, p. 21], its orders are not self-enforcing. As such, judicial review in the normal course would be entirely meaningful.

Saint Vincent also argues that this Court has jurisdiction over this matter under *Axon* because its Seventh Amendment claim is wholly collateral to the NLRB's normal statutory review scheme: Saint Vincent tells the Court that it "objects to 'agency power generally, not to anything particular about how that power was wielded.'" [ECF 21, p. 13 (quoting *Axon*, 598 U.S. at 193).] This is incorrect, as Saint Vincent's claim it is entitled to a jury trial is based exclusively on the prospect that it will be liable for *Thryv*-type remedies in the underlying case. *See Thryv, Inc.,* 372 NLRB No. 22, *enf. denied on other grounds*, 102 F.4th 727 (5th Cir. 2024). This renders Saint Vincent's Seventh Amendment claim a quintessential "as-applied" challenge, for if the NLRB's General Counsel were not seeking make-whole relief under *Thryv*, Saint Vincent would have no basis to demand a jury trial. In *Loma Linda-Inland Consortium for Healthcare Education v. NLRB*, No. 23-5096, 2023 WL 7294839 (D.C. Cir. May 25, 2023), the D.C. Circuit made clear that "an as-applied challenge to the Board's *statutory* jurisdiction in [a] particular case" does not entitle a party to avail itself of federal district courts when the normal statutory channels of judicial review are still available. *Id.* at *11. *Loma Linda* also states that "[n]othing in *Axon* holds that every 'nonfrivolous' constitutional objection to every agency proceeding . . . especially fact-bound as-applied claims to a particular exercise of agency jurisdiction, can bypass the congressional scheme established for judicial review." *Id.* Thus, under the D.C. Circuit's *Loma Linda* analysis, no jurisdiction exists for a district court to hear Saint Vincent's Seventh Amendment claim.

Finally, Saint Vincent's contention [ECF 21, p. 14] that the constitutionality of a Board remedy is beyond the Board's expertise not only ignores the Board's practice of considering and

addressing such arguments in its decisions [ECF 16. p. 21], but is also beside the point. In *Elgin v. Department of Treasury,* 567 U.S. 1 (2012), the Supreme Court found that an agency's ability to answer "many threshold questions that may accompany a constitutional claim" sufficed to satisfy the agency-expertise factor, *id.* at 22, even though the agency in that case "repeatedly refused to pass upon" constitutional questions, *id.* at 16. Saint Vincent has no answer for *Elgin*'s directly applicable reasoning.[7]

**B.     The remedies sought by the NLRB in Saint Vincent's case are for the vindication of public rights and are not "legal in nature."**

Saint Vincent asserts that the Board's *Thryv* remedies, as sought in the underlying unfair-labor-practice case, "do[] not implicate public rights," but rather "essentially amount[] to consequential or compensatory damages, which are tied directly to the private rights" of the employees adversely affected by its unfair labor practices. [ECF 21, p. 15.] However, Saint Vincent cites no authority to support its erroneous assertion that the public-rights exception to the Seventh Amendment depends on the *nature* of the remedy at issue in a particular case.[8] To the contrary, the Supreme Court has made clear that the Seventh Amendment is "no bar" to the power of Congress

---

[7] Saint Vincent also reads far too much into an unpublished, two-page order granting an administrative stay in *Amazon.com Services LLC v. NLRB*, No. 24-50761 (5th Cir. Sept. 30, 2024). [ECF 21, p. 15 & n.7.] That order (attached as Exhibit B) gives the Fifth Circuit additional time to decide a pending motion for injunction pending appeal and expressly states that "[n]othing in this order is to be construed as a comment on the ultimate merits" of the underlying case.

[8] Saint Vincent's understanding of the Board's *Thryv* remedies seems to be primarily based on the Fifth Circuit's sparse comments on this matter. [ECF 21, p. 16.] On judicial review of the Board's final order in *Thryv*, the Fifth Circuit partially denied enforcement on grounds unrelated to the remedies sought, finding instead that the employer in that case had not violated the NLRA in all the ways alleged. 102 F.4th 727, 737–48 (5th Cir. 2024). In dicta, the court of appeals referred to certain remedies the Board had ordered as "a novel, consequential-damages-like labor law remedy." *Id.* at 737. But, as the Board noted in *Thryv* itself, terms of art like "consequential damages," as used in other areas of the law, are inapt descriptions of make-whole relief designed to undo the effects of an unfair labor practice and advance the policies of the NLRA. 372 NLRB No. 22, slip op. at 8.

to create new rights, "and remedies therefor," and to place the enforcement of such rights in an administrative agency. *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 461 (1977).

And even if Saint Vincent could get around the public-rights exception, an unfair-labor-practice proceeding is not legal in nature, even if *Thryv* remedies are in play. [ECF 16, pp. 23–24.] Saint Vincent tries to distinguish *Thryv*-type remedies from other make-whole remedies that the Board has historically ordered on the basis that *Thryv* remedies involve "impos[ing] damages resulting from 'direct or foreseeable pecuniary harm," which is not really "equitable relief," and which goes beyond the backpay and reinstatement remedies authorized by Section 10(c) of the NLRA, 29 U.S.C. § 160(c).[9] But Saint Vincent's suggestion that the Board's monetary remedies should be limited to "backpay" for lost wages is foreclosed by longstanding precedent. The Supreme Court rejected this argument more than sixty years ago, explaining that Congress included "reinstatement with or without backpay" merely as an "illustrative application" of the Board's "diverse" remedial authority. *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 188–89 (1941). The Court found no basis for attributing "destructive significance" to the illustration and held that Congress "clearly" intended to grant the Board the open-ended authority to order "such affirmative action as will effectuate the policies of this Act." *Id.*; *accord Va. Elec. & Power Co. v. NLRB*, 319 U.S. 533, 539 (1943) ("Within this limit the Board has wide discretion in ordering affirmative action; its power is not limited to the illustrative example of one type of permissible affirmative order, namely, reinstatement with or without back pay.").

---

[9] Saint Vincent also makes the puzzling claim that making employees whole by taking into account the direct or foreseeable harm they incurred as a result of an unfair labor practice somehow "puts an aggrieved party in a *better* position than it would have been in had the [NLRA] not been violated." [ECF 21, p. 16 (emphasis added)].

**IV.    Saint Vincent's separation-of-powers arguments largely repeat its Seventh Amendment arguments, and are meritless (Count IV).**

The NLRB has already explained why Saint Vincent is wrong to argue that the Board purportedly usurped legislative and judicial power through its *Thryv* decision. [ECF 16, pp. 26–27.] To support its theory that the NLRB arrogated legislative power to itself, Saint Vincent claims that "Defendants fail to cite to any provision in the NLRA in which Congress contemplated the Board awarding compensatory or consequential damages to an aggrieved party." [ECF 21, p. 18.][10] But the NLRB did not need to do so, as it is well settled that the Board's broad remedial authority under Section 10(c) of the Act, 29 U.S.C § 160(c), encompasses various forms of circumstance-specific relief. *See, e.g., J.G. Kern Enterprises, Inc. v. NLRB*, 94 F.4th 18, 32 (D.C. Cir. 2024) ("[I]t is for the Board to decide, within its broad discretion, which remedial approach to follow."), *cert. denied,* No. 24-202, 2024 WL 4486396 (U.S. Oct. 15, 2024); *King Soopers, Inc. v. NLRB*, 859 F.3d 23, 37–38 (D.C. Cir. 2017) (upholding Board order for employer to pay search-for-work and interim employment expenses to alleged discriminatees based on the Board's "clear authority" under Section 10(c) "to adjust its make-whole relief frameworks as necessary to achieve the goals of the Act.").

Additionally, Saint Vincent now claims that this Court has subject-matter jurisdiction over its separation-of-powers claim because the NLRB, like the FTC in *Axon*, "houses (and by design) both prosecutorial and adjudicative activities." [ECF 21, p. 17 (quoting *Axon*, 598 U.S. at 189).] Moreover, Saint Vincent says, this structural arrangement "goes to the core" of the NLRB's existence. [*Id.* (quoting *Axon*, 598 U.S. at 189).] But this is a bait and switch; Saint Vincent's separation-of-powers claim is not premised on the alleged impropriety of agency officials serving as, for example, "both prosecutor and judge." *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023). Rather, Saint

---

[10] The NLRB does not agree that *Thryv* remedies are "compensatory or consequential damages." *See* note 8, above.

Vincent has argued that the remedial principles announced in *Thryv* intrude upon legislative and judicial prerogatives. [ECF 12, p. 20–21.] And in any event, "the Supreme Court has held that administrative agencies can, and often do, investigate, prosecute, and adjudicate rights without violating due process." *Id.* (citing *Withrow v. Larkin*, 421 U.S. 35, 47, 56 (1975)).

## V.    Saint Vincent's arguments do not weigh in favor of injunctive relief.

### A.    *Irreparable harm.*

Saint Vincent says barely anything about irreparable harm [*see* ECF 21, pp. 10 n.6, 18 n.9], even though such a showing is "the *sine qua non*" for injunctive relief—particularly the preliminary injunctive relief that Saint Vincent seeks. *Shaw v. Austin*, 539 F. Supp. 3d 169, 182 (D.D.C. 2021); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."). Its failure to meaningfully address this element is telling.

Saint Vincent does not dispute, and therefore concedes, that *John Doe Co. v. CFPB*, 849 F.3d 1129 (D.C. Cir. 2017), is controlling precedent. That case holds that "alleged constitutional defects" of an agency's structure do not automatically create irreparable harm. *Id.* at 1135. Rather, there needs to be an additional showing of a nexus between the unconstitutional features of the proceeding and a particular harm to the challenger. Saint Vincent has not made that showing here with respect to any of its claims; indeed, it has not even tried to do so.[11]

---

[11] Instead of addressing *John Doe Co.*, Saint Vincent relies on three out-of-circuit district court decisions for the proposition that being subjected to a purportedly unconstitutional NLRB proceeding qualifies as an "irreparable harm" for injunctive-relief purposes. [ECF 21, p. 18 n.9]. Respectfully, those cases were wrongly decided and are all now on appeal to the Fifth Circuit. In any event, this Court is bound to follow *John Doe Co.*; . in any event, this Court is bound to Regardless, even if this Court found those decisions to be persuasive, it must nonetheless follow *John Doe Co.*

In addition, after the NLRB submitted its dispositive motion in this case, Judge Mehta of this Court issued a memorandum opinion that undercuts Saint Vincent's claim of irreparable harm arising from its jury-trial claim. In *Ponte v. FDIC*, No. 1:24-CV-02379 (D.D.C. Oct. 11, 2024), Judge Mehta explained that "[i]t is well-established that the harm resulting from the denial of a jury trial *can be remedied on appeal*, even after the case has already been tried—the reviewing court simply orders a new trial." *Ponte*, slip op. at 15 (emphasis added) (citing *Tull v. United States*, 481 U.S. 412, 415, 427 (1987), and numerous other cases).

### B.    The Norris-LaGuardia Act.

Saint Vincent also questions whether the Norris-LaGuardia Act, 29 U.S.C. § 101, jurisdictionally bars the injunctive relief that Saint Vincent demands, arguing that "[t]he instant lawsuit . . . is not a 'labor dispute.'" [ECF 21, p. 18.] But the relevant question, under the plain text of the statute, is whether this case "involv[es] or grow[s] out of a labor dispute." 29 U.S.C. § 101. As Saint Vincent admits, a labor dispute is cognizable under Norris-LaGuardia "when 'the employer-employee relationship [is] the matrix of the controversy,'" for example, where "'the Employer and the Union representing its employees are the disputants, and their dispute concerns the interpretation of the labor contract that defines their relationship.'" [*Id.* at 19–20 (quoting *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 712–13 (1982)).] And as the NLRB previously described [*see* ECF 16, pp. 5–6], the underlying unfair-labor-practice proceeding involves allegations by Massachusetts Nurses Association ("Union") that Saint Vincent repeatedly interfered with, restrained, and coerced employees in the exercise of their Section 7 rights under the NLRA in various ways.[12]

---

[12] The Norris-LaGuardia Act itself contains a non-exclusive list of acts not subject to restraining orders or injunctions. *See* 29 U.S.C. § 104. Importantly among these prohibitions, courts may not enjoin persons from, "[b]y all lawful means aiding any person participating or interested in any labor

When the Supreme Court construed the Norris-LaGuardia Act in *Jacksonville Bulk Terminals*, above, it emphasized that the "term 'labor dispute' must not be narrowly construed because the statutory definition itself is extremely broad[.]" 457 U.S at 712. This is because "*Congress was intent upon taking the federal courts out of the labor injunction business* except in the very limited circumstances left open for federal jurisdiction under the Norris-LaGuardia Act." *Id.* at 712 (quoting *Marine Cooks & Stewards v. Panama S.S. Co.*, 362 U.S. 365, 369 (1960)). Since the instant case "involve[es] or grow[s] out of" a labor dispute between Saint Vincent and the Union, 29 U.S.C. § 101, the Norris-LaGuardia Act removes jurisdiction from this Court to issue an injunction.

**C.    If this Court finds merit to Saint Vincent's ALJ-removal claims, it should sever the relevant statutory provisions, not enjoining the NLRB's proceeding.**

Citing three recent decisions issued by district courts within Texas, Saint Vincent argues [ECF 21, p. 21], that the NLRB's severance analysis with respect to the ALJ-removability claim is "premature" and inappropriate because Saint Vincent seeks only a preliminary injunction at this time. Even if that is so, the NLRB has cross-moved for summary judgment on the merits, so Saint Vincent's argument fails. Moreover, even at the preliminary-injunction stage, a district court can deny injunctive relief if it determines that it "can sever the unconstitutional statutory provisions" at issue. *Space Expl. Techs., Corp. v. Bell*, 701 F. Supp. 3d 626, 635 (S.D. Tex. 2023) (citing *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610 (2020); *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320 (2006)).

---

dispute who is being proceeded against in, or is prosecuting, any action or suit in any court of the United States or of any State." Consistent with this limitation, courts may not enjoin unions or employees from seeking to resolve differences with an employer in non-judicial forums. *See In re Marine Eng'rs Beneficial Ass'n*, 723 F.2d 70, 74–76 (D.C. Cir. 1983); *AT&T Broadband, LLC v. IBEW Loc. 21*, 317 F.3d 758, 759–62 (7th Cir. 2003); *Tejidos de Coamo, Inc. v. Int'l Ladies' Garment Workers' Union*, 22 F.3d 8, 11–13 (1st Cir. 1994); *Lukens Steel Co. v. United Steelworkers*, 989 F.2d 668, 676–79 (3d Cir. 1993); *Camping Constr. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1342–46 (9th Cir. 1990) (each holding that Norris-LaGuardia applies to employer-filed complaints that seek to enjoin labor arbitrations).

To the extent Saint Vincent further argues [ECF 21, p. 21] that severance would not prevent the irreparable harm alleged, that assertion fails because Saint Vincent has pointed to no cognizable irreparable harm. *See* Part V.A above. [13]

## CONCLUSION

For all the reasons supplied above and in the NLRB's prior submissions, Plaintiff's Motion for Summary Judgment [ECF 12] should be denied. Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction [ECF 16] should be granted, and Counts III and IV of the Complaint should be dismissed without prejudice. Finally, Defendants' Motion for Summary Judgment

---

[13] Saint Vincent endorses the reasoning from *Space Exploration Technologies Corp. v. NLRB*, No. W-24-CV-00203-ADA, 2024 WL 3512082, at *5 (W.D. Tex. July 23, 2024), *appeal docketed*, No. 24-50627 (5th Cir. Aug. 1, 2024), that courts should refrain from attempting to sever NLRB ALJs' removal protections because "doing so here would circumvent the legislature without clear congressional intent." [ECF 21, p. 21 n.11 (quoting 2024 WL 3512082, at *5) (cleaned up).] In this regard, Saint Vincent and the *SpaceX v. NLRB* court sound remarkably similar to the opinions *dissenting* from the remedial holdings in *Collins*, *Arthrex*, and *Seila Law*. *Compare id., with Collins*, 594 U.S. at 280 (Gorsuch, J., concurring in part) (arguing that the "Court possesses no authority to substitute its own judgment about which legislative solution Congress might have adopted had it considered a problem never put to it" (emphasis removed)), *Arthrex*, 594 U.S. at 32 (Gorsuch, J., concurring in part and dissenting in part) (arguing that the Court should have "declined to enforce the statute in the case or controversy at hand" and left it to Congress to cure the constitutional defect), *and Seila Law*, 591 U.S. at 254 (Thomas, J., concurring in part and dissenting in part) (arguing that instead of severing the unconstitutional removal restriction, the Court should "deny CFPB's petition to enforce the civil investigative demand"). Thus, that Western District of Texas decision, which is currently on appeal, is not persuasive and certainly not binding upon this Court.

[ECF 16] should be granted as to Count I of the Complaint.

Respectfully submitted,
NATIONAL LABOR RELATIONS BOARD
Contempt, Compliance, and
  Special Litigation Branch

Kevin P. Flanagan
*Deputy Assistant General Counsel*
Tel: (202) 273-2938
kevin.flanagan@nlrb.gov
(No official bar number in Maryland)

/s/ Craig R. Ewasiuk
Craig R. Ewasiuk
*Attorney*
1015 Half Street SE, 4th Floor
Washington, DC 20003
Tel: (202) 840-7258
craig.ewasiuk@nlrb.gov
D.C. Bar No. 1044296