UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VHS ACQUISITION SUBSIDIARY NO. 7,<br><br>Plaintiff,<br><br>v.<br><br>**NATIONAL LABOR RELATIONS BOARD**, *et al.*<br><br>Defendants. | Case No. 1:24-cv-02577 (TNM) |

## MEMORANDUM ORDER

Plaintiff VHS Acquisition Subsidiary Number 7, Inc., doing business as Saint Vincent Hospital ("Saint Vincent"), brings this action against the National Labor Relations Board and a handful of its officers. Previously, this Court denied a motion by Saint Vincent for a temporary restraining order to halt an impending Board enforcement action. Now, Saint Vincent moves for summary judgment, arguing that the proceeding contravenes the Seventh Amendment and separation of powers principles. More, it claims that the removal restrictions of the Administrative Law Judges ("ALJs") assigned to the case are unconstitutional. So it seeks to enjoin the underlying proceeding.

The Board moves to dismiss, asserting broadly that injunctive relief is improper under the Norris-LaGuardia Act and that that the Court lacks subject matter jurisdiction over the Seventh Amendment and separation of powers claims. The Board also cross-moves for summary judgment on the challenge to the ALJ removal restrictions, insisting that the tenure protections are constitutional.

The Court is without power to hear the Seventh Amendment and separation of powers claims. The administrative review scheme in the National Labor Relations Act ("NLRA")

precludes its jurisdiction. And the Court agrees with the Board that the Norris-LaGuardia Act forecloses any injunctive remedy for Saint Vincent.

But the Court does have subject matter jurisdiction over the challenge to the ALJ removal restrictions. Nonetheless, due to the expedited nature of the briefing, the complexity of the issues, and the reality that the underlying Board proceeding is set to resume imminently, the Court will only issue a decision on jurisdiction today. A separate opinion resolving Saint Vincent's objections to the ALJ tenure provisions is forthcoming.

## I.

Saint Vincent is an acute-care hospital in Massachusetts. Pl.'s Mot. Summ. J., ECF No. 12, at 3. It employs many nurses who are represented by the Massachusetts Nurses Association (the "Union"). *Id.* Alleging several unfair labor practices, the Union filed a formal charge against Saint Vincent before the Board. *Id.* at 4. The Board then charged Saint Vincent with violating various provisions of the NLRA. *Id.* A Board ALJ was tasked with adjudicating the case. *Id.* at 5.

Just days before that proceeding was to begin, Saint Vincent came to this Court asking that things be halted. It moved for a temporary restraining order on the grounds that the Board proceeding is unconstitutional and being forced to defend it would cause it irreparable harm. Pl.'s Mot. TRO, ECF No. 3, at 2. This Court denied the motion. Tr. Mot. Hearing, ECF No. 9, at 22:22–23. But it instructed the parties that it would expedite briefing to consolidate briefing for a preliminary injunction with summary judgment on the merits of Saint Vincent's claims. *Id.* at 24:3–9; 25:15-16.

Ten days later, Saint Vincent filed the present motion for summary judgment and again requested that the impending Board proceedings be enjoined.[1] Pl.'s Mot. Summ. J., ECF No. 12. Saint Vincent insists that the Board's ALJs are unconstitutionally insulated from removal, that the enforcement action violates the Seventh Amendment, and that the Board's structure offends the separation of powers. *Id.* at 7–21. And it claims it will suffer irreparable harm without a cancellation of the underlying proceedings. *Id.* at 22–28.

The Board responds with a motion to dismiss and cross-motion for summary judgment. Defs.' Mot. Dismiss & Cross-Mot. Summ. J., ECF No. 16. It alleges that the Norris-LaGuardia Act forecloses injunctive relief. *Id.* at 27–28. And it contends that the Court lacks subject matter jurisdiction over Saint Vincent's Seventh Amendment and separation of powers claims. *Id.* at 20–27. It also insists that the ALJ's removal restrictions are constitutional. *Id.* at 9–16.

These motions are now ripe for disposition. However, because the Board proceedings are set to resume in a matter of hours, the Court only addresses its jurisdiction in the present opinion. A separate opinion determining the merits will be released in due course.

---

[1] Saint Vincent purports to "seek[] summary judgment as to its request for a preliminary injunction." *Id.* at 4. Because the Court doubts the existence of such a procedural maneuver, it construes Saint Vincent's motion as seeking summary judgment on the merits of its claims and asking for permanent injunctive relief. This is consistent with the briefing schedule set by the Court at the conclusion of the Temporary Restraining Order hearing, as the Board recognized. Tr. Motion Hearing, ECF No. 9, at 27:22–24 ("I am proposing and expect to combine the motion for preliminary injunction with trial on the merits as it were in this summary judgment briefing."). This does not prejudice either party. Only pure questions of law are at issue, so no factual development is necessary for the Court to determine whether permanent relief is appropriate. Thus, neither party has suggested that discovery is needed. More, Saint Vincent's briefing is sufficient for the Court to adjudicate the merits, and indeed both parties were on notice that the Court was expecting merits briefing this go-round. Finally, the decision to combine briefing for a preliminary injunction and summary judgment lies within the discretion of the Court. *See* Fed. R. Civ. Pro. 65(a)(2) ("Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing.").

## II.

Federal Rule of Civil Procedure 12(b)(1) governs dismissal of a complaint for lack of subject matter jurisdiction. The burden is on the plaintiff to establish jurisdiction. *Johnson v. Becerra*, 668 F. Supp. 3d 14, 19 (D.D.C. 2023), *aff'd*, 111 F.4th 1237 (D.C. Cir. 2024). The Court assumes the truth of the allegations in the complaint and may also make "appropriate inquiry beyond the pleadings to satisfy itself on authority to entertain the case." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).

If the Court finds subject matter jurisdiction, it may consider the cross-motions for summary judgment. To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The motion is properly granted "when, viewing the evidence in the light most favorable to the non-movant and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in her favor." *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1113 (D.C. Cir. 2016).

## III.

To preview what is to come: The Court is foreclosed from hearing the Seventh Amendment and separation of powers claims because of the exclusive review provisions of the NLRA. And the Court lacks the authority to issue injunctive relief due to the jurisdiction-stripping provisions of the Norris-LaGuardia Act.

### A.

Start with the broadest question: For which claims is any type of relief, injunctive or otherwise, completely foreclosed due to a lack of subject matter jurisdiction? The answer comes

from a smattering of statutes and caselaw discussing when administrative review is exclusive and when it can be circumvented. Generally, a party aggrieved by a decision of the Board must make its case first to the agency and then to the court of appeals. 29 U.S.C. § 160(f) ("No objection that has not been urged before the Board . . . shall be considered by the court . . . ."); *see also Free Enterprise Fund. v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010) (noting that statutory schemes for agency review "[g]enerally" are "exclusive."). So usually "[t]he agency . . . fills in for the district court, with the court of appeals providing judicial review." *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 185 (2023). But some challenges are so "extraordinary" that they may be heard by the district court before the agency has issued a final decision reviewable by a court of appeals. *Id.* at 180; *see also Bohon v. Fed. Energy Regul. Comm.*, 92 F.4th 1121, 1123 (D.C. Cir. 2024) (holding that the *Axon* test determines district court jurisdiction "*before* there [is] an agency order to challenge").

Whether or not a claim of this sort can be heard by a district court turns on three questions, dubbed the *Thunder Basin* factors. "First, could precluding district court jurisdiction foreclose all meaningful review of the claim?" *Axon Enter.*, 598 U.S. at 186 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–13 (1994)) (cleaned up). Second, "is the claim wholly collateral to the statute's review provisions?" *Id.* And finally, "is the claim outside the agency's expertise?" *Id.* If the answer to these three questions is "yes," then the challenge is not "of the type Congress intended to be reviewed within the statutory structure." *Thunder Basin*, 510 U.S. at 212 (cleaned up). In such a case, the district court retains its more general federal question jurisdiction given by 28 U.S.C. § 1331, and it can hear the challenge.

Saint Vincent's contentions fall on both sides of the jurisdictional line. Start with the claims for which district courts lack jurisdiction. These are Saint Vincent's assertions that the

5

Board proceedings violate the Seventh Amendment right to a jury trial and the separation of powers.

To tee up its Seventh Amendment claim, Saint Vincent insists that the NLRA only authorizes equitable relief. Pl.'s Mot. Summ. J. 17–18 (citing 29 U.S.C. § 160(c)). But Saint Vincent claims that the Board is running afoul of the statute by authorizing its regional offices to seek legal relief—namely, consequential or compensatory damages. *Id.* at 18 (citing *Thryv, Inc.*, 372 NLRB No. 22, at \*13–14 (Dec. 13, 2022), *vacated in part by Thryv, Inc. v. Nat'l Lab. Rels. Bd.*, 102 F.4th 727 (5th Cir. 2024)). And it emphasizes that the Board "seeks consequential damages against Saint Vincent" in various forms, like "compensation for all affected employees for any . . . pecuniary harms incurred as a result" of Saint Vincent's alleged unfair labor practices. *Id.* at 19–20 (quoting Second Complaint, ECF No. 3-1 Ex. A, at 8–9) (cleaned up). Saint Vincent claims that the Board's pursuit of damages infringes upon its Seventh Amendment right to a jury trial. *Id.* at 19 (citing *Stern v. Marshall*, 564 U.S. 462, 489 (2011) and *Sec. Exch. Comm'n v. Jarkesy*, 144 S. Ct. 2117, 2127 (2024)).

But the Court lacks jurisdiction to decide the merits of this claim. Application of the *Thunder Basin* factors makes clear that "the statutory review scheme [of the NLRA] . . . reaches the claim in question," and thereby forecloses district court review. *Axon Enter.*, 598 U.S. at 900–01. To start, Saint Vincent can still receive "meaningful review" of its Seventh Amendment challenge. *Thunder Basin*, 510 U.S. at 212–13. Saint Vincent can contest any consequential damages at a circuit court, if and when it comes to that. If persuaded, that court could fully remedy Saint Vincent's harm by refusing to enforce the damages award. *See id.* at 191. So there is a "meaningful avenue of relief." *Free Enter. Fund*, 561 U.S. at 491 (cleaned up). This is not a harm that "is impossible to remedy once the proceeding is over [and] appellate review kicks in."

*Axon Enter.*, 598 U.S. at 903.  Instead, Saint Vincent's feared injury—that it will be saddled with consequential damages beyond the Board's statutory authority—can be wiped away by an appellate court order.  29 U.S.C. § 160(e) ("[T]he court . . . shall have power . . . to make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the Board.").  Experience has borne this out.  *See, e.g.*, *Thryv, Inc.*, 102 F.4th at 748 (declining to enforce a portion of a Board order).  The first *Thunder Basin* factor therefore points towards a lack of district court jurisdiction.

Second, the challenge to the potential damages award is not "wholly collateral" to the statutory review scheme.  *Axon Enter.*, 598 U.S. at 184.  Saint Vincent is not "challenging the [Board's] power to proceed at all."  *Id.* at 193; *see also Free Enter. Fund*, 561 U.S. at 490 (challenges to the removal and appointment provisions for members of the Public Company Accounting Oversight Board were collateral because "petitioners object[ed] to the Board's existence, not to any of its auditing standards").  Instead, it is protesting allegedly *ultra vires* actions taken in the underlying proceedings.  *See Axon Enter.*, 598 U.S. at 193.  In other words, Saint Vincent is not "object[ing] to the [Board's] power generally," but instead to "how that power was wielded" in a particular instance.  *Id.*  Collateralism kicks in when a party's claims "have nothing to do with the [matters] they would adjudicate in assessing the charges against [the plaintiff]." *Id.*  Not when a party is claiming an agency has gone out of its statutory bounds by awarding certain remedies in a particular enforcement action.  *Thunder Basin*, 510 U.S. at 215; *accord Nexstar Media, Inc. Grp. v. Nat'l Lab. Rels. Bd.*, 2024 WL 4127090, at *5 (N.D. Ohio Aug. 26, 2024) ("Essentially, Plaintiff raises an argument to the NLRA—not a Seventh Amendment violation.  And more to the point, if [Plaintiff] is correct in anticipating that the NLRB will exceed its authority, that issue may be raised in the Court of Appeals, which will

7

have the authority to modify such a ruling or set it aside."). So on the *Thunder Basin* factors, Saint Vincent is so far zero-for-two.

Now consider the last factor, agency expertise. This one likewise favors the Board. Congress has given the Board "broad discretionary" power to "devis[e] remedies to effectuate the policies of the Act." *Fibreboard Paper Prod. Corp. v. Nat'l Lab. Rels. Bd.*, 379 U.S. 203, 216 (1964) (citing 29 U.S.C. § 160(c)). So crafting proper relief is a skill within the agency's expertise. *Thunder Basin*, 510 U.S. at 212. And while "adjudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies," the crux of Saint Vincent's challenge here is not fundamentally constitutional. *Johnson v. Robison*, 415 U.S. 361, 368 (1974). Instead, it is an allegation that the Board will exceed its statutory authority and impose an improper financial penalty. So Saint Vincent's claim is one the Board is competent to resolve: whether the Board's authorizing statute permits it to wield certain powers and issue certain remedies. *Fed. L. Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551, 561 (D.C. Cir. 2023). Besides, even if this *were* a constitutional challenge, the Supreme Court has sanctioned agency review of constitutional questions when they arise in the context of a distinct enforcement action and do not challenge the ability of the agency to act *writ large*. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012); *Thunder Basin*, 214–15. So all three *Thunder Basin* factors convince the Court that it is not authorized to hear Saint Vincent's Seventh Amendment challenge.

The so-called separation-of-powers claim is similar. Saint Vincent asserts that the Board has infringed upon the separation of powers because it "has taken it upon itself to adjudicate private rights" by authorizing consequential damages without a jury trial. Pl.'s Mot. Summ. J. at 20–21. This is the same package wrapped in different paper. Because there is no meaningful

distinction between the Seventh Amendment challenge and the separation of powers allegation, it follows that the Court lacks jurisdiction to entertain either.

As for Saint Vincent's challenge to the ALJ removal restrictions, the Board acknowledges that the Court can hear this allegation. Defs.' Mot. Dismiss & Cross-Mot. Summ. J. at 2–3. For good reason: The Supreme Court has expressly sanctioned the ability of district courts to entertain challenges to removal restrictions. *See Axon Enter.*, 598 U.S. at 196. Broad challenges to removal restrictions are "not of the type [administrative] statutory review schemes reach." *Id.* In sum, then, the Court lacks jurisdiction to hear the Seventh Amendment and separation of powers challenges. But it has the authority to decide the challenge to the ALJ removal restrictions. This the Court will do in a later opinion.

## B.

Still, that does not resolve all the jurisdictional snags. Saint Vincent is moving for injunctive relief to stop the underlying proceedings in their tracks. But its requested relief clashes with the Norris-LaGuardia Act ("Act"). There, Congress made clear that "[n]o court of the United States . . . shall have jurisdiction to issue any . . . injunction in a case involving or growing out a labor dispute," except in "strict conformity" with the statute. 29 U.S.C. § 101. This broad prohibition reflects Congress' intent to "tak[e] the federal courts out of the labor injunction business except in the very limited circumstances left open for federal jurisdiction in the Norris-LaGuardia Act." *Marine Cooks & Stewards v. Panama S.S. Co.*, 362 U.S. 365, 369 (1960).

To determine whether the Act divests the Court of its remedial powers requires an algorithmic approach. *See Lukens Steel Co. v. United Steelworkers of Am. (AFL-CIO)*, 989 F.2d 668, 675–76 (3d Cir. 1993). First, the Court must determine whether the action "involv[es] or

9

grow[s] out of a labor dispute," as defined by the Act. 29 U.S.C. §§ 101, 113(c). If a labor dispute is at play, the Court asks whether this is one of the few cases that can satisfy the rigid requirements for an injunction under the Act. 29 U.S.C. §§ 107–09. If the movant is unable to meet those specifications, the Court checks to see if the dispute nonetheless falls within of the two judicially created exceptions to the Act. *Lukens Steel Co.*, 989 F.2d at 76. If the answer to this last question is no, then the Court may not grant injunctive relief.

Take it step by step. *First*, the Court finds that the present action "grow[s] out of a labor dispute." 29 U.S.C. § 101. Under the Act, "[t]he term labor dispute includes any controversy concerning terms or conditions of employment." 29 U.S.C. § 113(c). The Supreme Court has repeatedly admonished that the definition is not to be given a narrow construction. *Burlington N. R. Co. v. Bhd. of Maint. of Way Emps.*, 481 U.S. 429, 441–42 (1987). Still, it is not boundless. "The critical element" in determining whether a controversy is a labor dispute "is whether the employer-employee relationship is the matrix of the controversy." *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 712 (1982).

The current proceeding stems from the Union's charge that Saint Vincent engaged in unfair labor practices. The Union is trying to persuade the Board that Saint Vincent: retaliated against employees for engaging in protected activity; discriminated regarding the hire, tenure, or terms and conditions of employment to discourage union membership; and failed to bargain collectively in good faith with the Union, among other claims. *See generally* Dec. Michael J. Spagnola, ECF No. 3-1. Clearly, the underlying spat here "place[s] in controversy the wages or

hours or other terms and conditions of employment of these employees." *Columbia River Packers Ass'n v. Hinton*, 315 U.S. 143, 147 (1942).

It is of no consequence that the Union is a nonparty to the present suit. See 29 U.S.C. § 113(a) ("[L]abor dispute includes any controversy concerning terms or conditions of employment . . . regardless of whether or not the disputants stand in the proximate relation of employer and employee."). Nor does it matter that many of the claims here are constitutional and thereby attenuated from the underlying labor charges. The Norris-LaGuardia Act has great breadth. It precludes jurisdiction when a suit merely "grow[s] out of a labor dispute." 29 U.S.C. § 101. Something "grow[s] out" of something else when it arises or results from it. *Webster's New Int'l Dictionary* 1108 (William Allan Neilson et al. eds., 1941). Saint Vincent's beef with the Board is due to its conflict with the Union. In other words, the present constitutional claims "would not exist but for the underlying [Board charges]." *Armco, Inc. v. United Steelworkers of Am.*, 280 F.3d 669, 680 (6th Cir. 2002). Thus, Saint Vincent's requested relief grows out of a labor dispute and comes within the ambit of the Act. *Accord AT&T Broadband, LLC v. Int'l Bhd. of Elec. Workers*, 317 F.3d 758, 760 (7th Cir. 2003) (Easterbrook, J.) ("That the arbitration is not itself a 'labor dispute' does not make this suit less one 'growing out of' a labor dispute.").

So labor dispute, check. *Second,* could an injunction satisfy the specifications set out in §§ 107–09 of the Act? To issue injunctive relief, the Court would need to find, among other things, that "substantial and irreparable injury to [Saint Vincent's] property" will occur without it. 29 U.S.C. § 107(b). But as a matter of controlling precedent, Saint Vincent cannot make this showing.

Saint Vincent alleges that it will suffer immediate and irreparable harm absent an injunction, as its "constitutional rights are being threatened and impaired." Pl.'s Mot. Summ. J.

11

at 22–23.  According to it, being subject to an allegedly unconstitutional proceeding is alone sufficient to satisfy the irreparable harm test.  *Id.* at 23.

The problem is that the D.C. Circuit has said otherwise.  It has expressly held that "the violation of separation of powers by itself is not invariably an irreparable injury," without a showing "of immediate or ongoing harm stemming from the [agency's] alleged constitutional defects."  *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129 (D.C. Cir. 2017) (cleaned up) (quoting *In re al-Nashiri*, 791 F.3d 71 (D.C. Cir. 2015)); *see also Aposhian v. Barr*, 958 F.3d 969, 990 (10th Cir. 2020), *abrogated on other grounds by Garland v. Cargill*, 602 U.S. 406 (2024) (rejecting plaintiff's argument that "a generalized separation of powers, by itself, constituted irreparable harm" and noting, "[t]o the contrary . . . cases finding that a violation of a constitutional right alone constitutes irreparable harm are limited to cases involving individual rights, not the allocation of powers among the branches of government").  Recall that the Court lacks jurisdiction over the only claim that implicates individual rights—the Seventh Amendment claim.  So only the removal restriction claim weighs in here.  But under controlling law, Saint Vincent's naked invocations of structural harm cannot suffice.

Saint Vincent asks the Court to disregard this precedent.  It emphasizes *Axon*'s recognition that "subjection to an unconstitutionally structured decisionmaking process" is a "here-and-now injury."  *Id.* at 24–25 (quoting *Axon Enter.*, 598 U.S. at 191).  And it highlights *Axon*'s admonition that the right to avoid an unlawful adjudication is "effectively lost if review is deferred until after trial."  *Id.* (quoting *Axon Enter.*, 598 U.S. at 191).  This language, to Saint Vincent, speaks directly to the irreparable nature of their injury.  So according to Saint Vincent, *Axon* effectively nullified *John Doe* and *In re al-Nashiri*.  Pl.'s Mot. Summ. J. at 22–28.  It therefore urges the Court to ignore those precedents and permit bare claims of structural harms to

12

satisfy the irreparable injury inquiry. But this argument, while superficially compelling, unravels when interrogated further.

As an initial matter, this Court lacks the power to toss aside controlling Circuit precedent. This principle stands even if later cases undermine some of the reasoning of earlier ones. *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997). So although *Axon* may call some of the rationale in *John Doe* and *In re al-Nashiri* into doubt, those cases continue to bind this Court until told otherwise. And those precedents are clear that structural harms—unaccompanied by more tangible injuries—do not satisfy the irreparable injury test.

In any event, it is not clear that *John Doe* and *In re al-Nashiri* are headed towards oblivion. *Axon* did not address whether structural constitutional harms give rise to irreparable injuries. Instead, it asked whether district courts have jurisdiction to entertain the merits of structural constitutional challenges. *Axon Enter.*, 598 U.S. at 180. So, true, *Axon* acknowledged that "being subjected to an agency's unconstitutional exercise of authority constitutes a present injury, separate and apart from the ultimate result of the proceeding." *Meta Platforms, Inc. v. Fed. Trade Comm'n*, 2024 WL 1121424, at *9 (D.D.C. Mar. 15, 2024). But *Axon* did *not* hold that every "'here-and-now' injury rises to the level of gravity required to satisfy the irreparable injury prong of the preliminary injunction standard." *Id.*; *accord Kim v. Fin. Indus. Regul. Auth., Inc.*, --- F.Supp.3d ---, 2023 WL 6538544, at *13 n.19 (D.D.C. Oct. 6, 2023). Perhaps some language from *Axon* is in tension with *John Doe* and *In re al-Nashiri*. But a new case does not automatically overrule tangential cases *sub silentio*, even if there is some resulting discontinuity.

13

And more importantly, this Court lacks the authority to circumvent binding precedent by reading between the lines.

As a matter of law, then, Saint Vincent is not able to show that the removal restrictions will inflict irreparable injury without injunctive relief. But the Act requires just that. 29 U.S.C. § 107(b).

*Third,* and finally, does Saint Vincent's claim fall within one of the judicially created exceptions to the Act? These carve-outs are narrow and specific. First, a district court can enjoin a labor dispute "when necessary to reconcile Norris-LaGuardia with the mandates of a specific federal [labor] statute." *Dist. 29, United Mine Workers of Am. v. New Beckley Min. Corp.*, 895 F.2d 942, 946 (4th Cir. 1990) (cleaned up); *see Bhd. of R. R. Trainmen v. Chicago R. & I. R. Co.*, 353 U.S. 30, 40 (1957) (enjoining a labor dispute to accommodate the Railway Labor Act). Second, injunctions are permitted "when necessary to accommodate Norris-LaGuardia's strong policy favoring arbitration." *Dist. 29*, 895 F.2d at 946; *see Jacksonville Bulk Terminals, Inc.*, 457 U.S. at 708 (holding the Act was inapplicable to a case "in which the employer sought to enforce the union's contractual obligation to arbitrate grievances rather than to strike over them").

Saint Vincent's challenge to the removal restrictions does not fall within either caveat. There is no other labor statute to be accommodated. And neither party is trying to enforce a contractual arbitration clause. Having exhausted the algorithm, the Court finds that the Act precludes injunctive relief here.

## IV.

For all these reasons, the Court lacks subject matter jurisdiction over Saint Vincent's Seventh Amendment and separation of powers claims. Those claims are thus **DISMISSED**.

More, the Court lacks the authority to enjoin the pending Board proceedings. Saint Vincent's motion for injunctive relief is therefore **DENIED** and the Board's motion for summary judgment on this point is **GRANTED**. The Court will rule on the merits of the one remaining claim—the challenge to the ALJ removal restrictions—in due course.

Dated: November 17, 2024

TREVOR N. McFADDEN
United States District Judge